SCHULER v. HASSINGER et al. (four cases).

KNIGHT v. SAME (two cases).

(Circuit Court of Appeals, Fifth Circuit. February 22, 1910.)

Nos. 1,924, 1,925, 1,939, 1,992, 2,001, 2,029.

1. BANKRUPTCY (§ 455\*)—APPEAL—APPEALABLE ORDERS.

Orders of a bankruptcy court relating to the sale of a bankrupt's property are regular steps in the proceedings, and not appealable under Bankruptcy Act July 1, 1898, c. 541, § 25a, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3432).

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 455.\*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. BANKRUPTCY (§ 269\*)—SALE OF PROPERTY—GROUNDS FOR SETTING ASIDE—INADEQUACY OF PRICE.

In the absence of reliable evidence impeaching it, the appraisal governs as to the value of a bankrupt's property, and a sale for more than the appraised value, confirmed by the court, will not be set aside by the appellate court on the ground of inadequacy of price.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 269.\*]

3. BANKRUPTCY (§ 263\*)—SALE OF PROPERTY—VALIDITY.

A sale in bankruptcy of the property of a large manufacturing corporation is not subject to objection because the property was purchased by a reorganization committee, nor is it invalid as collusive or unfair because such purchase was favored by the trustees and on their recommendation they were permitted to receive, as part of the purchase price, securities which were a lien on the property.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 263.\*]

4. BANKRUPTCY (§ 260\*)—SALE OF PROPERTY—VALIDITY.

An order for the sale of a bankrupt's property is not invalid as matter of law because it does not fix an upset price for the property, which is to be sold subject to confirmation.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 260.\*]

5. BANKRUPTCY (§ 446\*)—PROCEEDINGS TO REVISE—MATTERS REVIEWABLE.

A general objection that a sale of a bankrupt's property was unfair, illegal, and void cannot be considered by the Circuit Court of Appeals on a petition to revise in matter of law, in the absence of an agreed state-

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment of facts or findings by the court or referee; nor can orders which were within the discretion of the court be reviewed unless an abuse of discretion is shown.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 446.*]

Petitions to Revise Proceedings of the District Court of the United States for the Northern District of Alabama, in Bankruptcy.

Appeals from the District Court of the United States for the Northern District of Alabama.

In the matter of the Southern Steel Company, bankrupt. Appeals and petitions for revision by George H. Schuler and Samuel I. Knight against William H. Hassinger and others, trustees, to review certain orders. Appeals dismissed, and petitions for revision denied.

John W. Tomlinson, for petitioner.

E. K. Campbell, Augustus Benners, Wm. B. Hornblower, and J. Norris Miller, for respondents.

J. W. Tomlinson, for appellant.

E. K. Campbell, Augustus Benners, Wm. B. Hornblower, and J. Norris Miller, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. In October, 1907, sundry creditors of the Southern Steel Company, a manufacturing corporation under the laws of Alabama, filed, in the District Court for the Northern District of Alabama, several petitions, charging acts of bankruptcy, and praying that said steel company should be adjudicated a bankrupt. Thereupon receivers were appointed, and on January 21, 1908, the bankruptcy proceedings under the several petitions were consolidated, and the whole case transferred to the Southern Division o. the Northern District, and thereupon in said division said steel company was adjudicated a bankrupt. As we gather from the record, there was no objection or opposition to such adjudication; certainly, no appeal was prosecuted therefrom.

At this time the Southern Steel Company was capitalized in the sum of $25,000,000; $10,000,000 preferred stock, and $15,000,000 common stock. And it was the owner of wire and rod mills, steel plants, furnaces, coke ovens, plant sites, coal lands and coal rights, red ore lands and rights, all in the state of Alabama, and was the owner of the capital stock of subsidiary incorporated steel companies in Georgia and Tennessee, all subsequently appraised by sworn appraisers appointed in the bankruptcy court in the sum of $7,674,380.91.

At the date of adjudication the company's properties were mortgaged and pledged in the sum of $6,674,000. Following the adjudication, three trustees were chosen by the creditors, and their appointment and election confirmed by the court. At the same time, the court appointed three disinterested persons as appraisers. The said trustees entered upon the discharge of their duties, and on February 26, 1909, they filed with the referee a petition praying for authority to sell all the property of the company free and clear of all mortgages, liens,

and incumbrances for the payment of debts; offerings first to be in parcels in such a way as to protect the several lien creditors, and afterwards in bulk if a higher price could be obtained thereby. The necessity and urgency of the recommended sale was fully shown by the facts recited in the petition, which facts are in no wise disputed in the court below or in this court.

In the said petition the referee was advised that there was in existence a reorganization committee under and in pursuance of a certain plan and agreement of reorganization of the Southern Steel Company dated May 15, 1908, a copy of which plan and agreement was annexed and made part of the petition. The trustees averred that said reorganization committee claims to hold all the certain issue of $3,000,-000 secured by a mortgage on all the properties to the Farmers' Loan & Trust Company, and further claims that the bonds and accrued interest constitute a valid and binding obligation and a prior and subsisting lien on the properties mentioned in the mortgage; but no special relief was asked for or against said reorganization committee.

The petitioners suggest that in order to facilitate and aid in the sale and purchase of said properties, and that the highest possible price be attained, it may be desirable that provision be made in the decree or order of sale to the effect that the purchaser or purchasers may use and turn in, on account of such purchase price, bonds or trust notes or lien claims or proved claims against the bankrupt's estate as the trustee may determine to be a minimum amount to which said purchasers, as the holders of said bond or trust notes, claims, or liens, will be entitled to receive on the distribution of the proceeds of sale.

Upon the filing of said petition, the referee set the hearing thereon for March 4, 1909, and notice thereof was duly given, and the referee convoked a creditors' meeting to consider the same. On March 4th the meeting of creditors was held, and thereat the sale proposed by the trustees was recommended. The meeting also recommended the recognition of the mortgage creditors' claims to priority, and that the appraisers should file their appraisal.

On March 4th, on leave of the referee, George II. Schuler, representing himself to be a large stockholder of the Southern Steel Company, intervened to oppose the proposed sale on the ground that no appraisement according to section 70b of the bankrupt law (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]) had been made, and that a minimum sum of 75 per cent. of the value of the property should be fixed, and opposing the allowance of securities and claims to be received as a part of the purchase price.

The petition of the trustees for an order of sale coming on to be heard before the referee, an order was entered adjudicating and recognizing the nature, amount, and character of the liens claimed by the Farmers' Loan & Trust Company, Central Mortgage & Trust Company, and the Trust Company of America, and ordering the properties to be sold on April 12, 1909, free and clear of any and all liens and mortgages; said liens and mortgages to be shifted to the proceeds of the sale of the properties so mortgaged, and giving any purchaser at the sale the right to use and apply securities and claims on payment of

purchase price. It was also ordered that the property should be sold in parcels in order that the proper funds to which liens were to be shifted might be readily ascertained.

No exception was taken to this decree within five days, and thereupon, under the rules of court, it was confirmed by the District Court on March 10, 1909.

On March 15th, five days later, George H. Schuler filed a petition with the referee to review the said order, which petition was certified to the court, and there, on motion of trustees, it was dismissed on March 27, 1909.

On March 29, 1909, Samuel I. Knight, alleging himself to be a holder of one of the collateral trust notes and a stockholder in the bankrupt corporation, filed an intervention attacking the order of sale made by the referee on the ground that it adjudicated the validity of the mortgage bonds and trust notes, etc., and that no upset price was fixed, and that securities and claims were to be received on account of the purchase price; substantially the same objections as theretofore made by Schuler. This intervention of Knight finally came on to be heard on April 5th before the District Court, and there the petitioner, Knight, was denied the right of intervention, for the reason, among others, that as a creditor he failed to show that he was a creditor at the time the court confirmed the decree of sale or to show that he would be injured by the court failing to permit him to intervene.

On March 23, 1909, the appraisers appointed by the court made a report of value of the property of the Southern Steel Company in the hands of the trustees. This report seems to have been filed with the trustees' report of sale, and it is elaborate and minute as to details. The gross valuation as summed up was $7,674,380.91. As this amount included the value of property of the subsidiary companies in Tennessee and Georgia, of which the Southern Steel Company owned only the stock, and which property was under mortgage indebtedness in the amount of $3,017,819.26, the valuation of the appraisers should be reduced by said sum, which leaves a net appraised value of the properties of $4,656,561.65.

After due advertisement, and on the day named in the order of sale, the trustees sold the property in accordance with the order of sale, and the same was adjudicated in bulk to William W. Miller, Esq., attorney for the reorganization committee, for the gross sum of $5,111,000.

Promptly, George H. Schuler and Samuel I. Knight filed exceptions to the trustees' report of sale claiming that said sale was illegal and void, was collusive, the property brought an inadequate price, competition was stifled, terms of sale were unfair to bidders, and unfair to creditors, and charging collusion—all of which objections and exceptions were on the 19th day of April, 1909, overruled, and at the same time the referee in a formal decree ratified and confirmed the sale.

On April 20, 1909, the said Schuler and Knight, reiterating their previous objections, applied for a petition to review the order confirming the sale, which review came on to be heard before the District Court on the 1st day of May, 1909, when the District Court, considering that the assignments of error in the petition for review were not

well taken, dismissed the said petition, and further ordered and adjudged that the action of the referee in confirming the sale aforesaid should be in all things ratified and confirmed.

The matter of the sale and confirmation thereof of the property of the Southern Steel Company has been brought before this court:

(1) On the petition of George H. Schuler (No. 1,924), an alleged holder of common and preferred stock in said steel company, to superintend and revise the order of sale rendered by the referee and confirmed by the District Court on the 27th day of March, 1909.

(2) On the petition of Samuel I. Knight (No. 1,925), an alleged creditor and stockholder, to superintend and revise the whole order of sale.

(3) The joint petition of George H. Schuler and Samuel I. Knight (No. 1,939) to superintend and revise the order of the referee confirming the sale of the Southern Steel Company's properties and the order of the District Court confirming the said sale.

(4) An appeal prosecuted by Samuel I. Knight (No. 2,001) from an order of the District Court rendered on the 8th day of April, 1909, denying him, the said Knight, the right to intervene in the bankruptcy proceedings for the purpose of opposing the sale of the bankrupt's properties.

(5) An appeal by George H. Schuler (No. 1,992) from an order denying him, the said Schuler, a review of the order of sale made by the referee on the ground that his petition for review had not been filed within the time required by the rule of court.

(6) The joint appeal of George H. Schuler and Samuel I. Knight (No. 2,029) from the order of the District Court confirming the sale theretofore made of the bankrupt property.

By consent of the parties and order of court these six cases were consolidated and were heard together.

A motion has been made to dismiss the appeals because they are taken to review orders and decrees not within the scope of section 25a of the bankruptcy act of 1898, nor are they appeals from orders and decrees in independent suits or controversies arising out of the settlement of the estate of bankrupts, and therefore no appeal lies.

The proceedings in the District Court in the bankruptcy of the Southern Steel Company, which are attacked in the several appeals, to wit, the sale and disposition of the bankrupt's effects, are regular steps or proceedings in bankruptcy, and no appeal lies from orders or decrees in such proceedings. See Remington on Bankruptcy, 1678, § 2864, for a full discussion, and First National Bank v. Chicago Title & Trust Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051; In re Whitener, 105 Fed. 185, 44 C. C. A. 434; In re Friend, 134 Fed. 778, 67 C. C. A. 500; Dickas v. Barnes et al., 140 Fed. 849, 72 C. C. A. 261, 5 L. R. A. (N. S.) 654; Davidson & Co. v. Friedman, 140 Fed. 853, 72 C. C. A. 553.

It is true that in the order of sale the referee recognizes and adjudicates the validity and amount due on the several mortgages upon the property of the Southern Steel Company as incidental to the necessary sale of the property free and clear of all incumbrances; but it is doubtful if such recognition was such an allowance of a claim as would en-

title any party not adversely affected to appeal therefrom; but, even if an appeal from such order could have been taken by a proper party, neither the appeal of Samuel I. Knight (No. 2,001) nor of George H. Schuler (No. 1,992), although relating to the order of sale, was an appeal from that order, but were appeals, one from an order denying Knight the right to intervene because he was not a creditor, and the other from an order denying Schuler the right to review, because not applied for in time. And it may be said, further, that, if any one of the appeals now before us could be maintained on the ground that it was taken from an order allowing a claim, then only the validity of the claim allowed could be considered, and there is no evidence in the record attacking the validity of the claims adjudicated by the referee, but all tends to establish them.

It follows that the appeals in this case must be dismissed.

Objection is made to the petitions to superintend and revise on the ground that they do not seek to revise in matters of law, and that in so far as they attempt the same they are frivolous. It is also objected that said petitions fail to present to this court any findings of fact or conclusions of law of the referee or the District Court so that the court may see the precise questions of law upon which rulings are made; and, further, that said petitioners fail to show that they have been aggrieved by the orders and decrees sought to be revised.

The three petitions to revise assign errors in great number covering nearly every phase of the proceedings in the bankruptcy of the Southern Steel Company, from the filing of the petition of the trustees for an order of sale to the final order of confirmation in the District Court.

The specifications of error are boiled down for argument by the learned counsel for the petitioners in their brief to the following:

"(1) To the objection that the property was sold for a grossly inadequate sum.

"(2) To the objection that said sale was collusive.

"(3) To the objection that said sale was made without an upset price having been fixed in the order of sale.

"(4) To the objection that the terms of sale were unequal and unfair, and that competition thereby was stifled.

"(5) To the objection that said sale was insufficiently advertised.

"(6) To the objection that said sale was made without sufficient time being allowed to elapse between the date of the order and the time fixed for the sale to allow efforts to be made to get capital commensurate with the value of the property interested in the purchase thereof.

"(7) To the objection that there was no proof made of the correctness of the claims allowed by the order of sale to be deposited on account of the purchase price and no opportunity afforded parties in interest to contest the same.

"(8) To the objection that sufficient time was not given to allow proof to be adduced in support of the objections and exceptions filed against the confirmation of said sale.

"(9) To the objection that said sale was absolutely unfair, illegal, and void.

"(10) To the denial of the petition of Samuel I. Knight to intervene."

We deal with these objections as follows:

(1) "That the property was sold for a grossly inadequate price." We find no evidence in the transcript as to the original cost of the property of the Southern Steel Company. The company had a capital stock of $25,000,000; but we are in the dark as to how much of that

stock was paid in cash; but, from what does appear in the record, it is evident that most of the said stock was not fully paid, if not wholly water or air. The company operated the property at a loss resulting in bankruptcy. The receivers undertook to operate the property and were obliged to abandon it as unprofitable. The sworn appraisers of the court valued it at $4,656,561.65, and the property was sold for $5,111,000. The great value claimed by petitioners herein is based upon affidavits giving estimates and upon an estimate in the reorganization plan amounting to this that, if the property can be restored to a running, operating condition by the reorganization of its debts and assets under the plan proposed and involving the advancement and investing of several millions of dollars, a net revenue of $1,200,000 per annum is a just estimate of the earning capacity of the property. And all seems to be based on the opinion of the trustees, as per letter referred to and found in the record.

· The sworn value of the property fixed by the appraisers appointed by the court controls; but, as it sold for more, we are remitted to the sale for value, and we cannot as a matter of law hold that the property was worth more than $5,111,000, which it actually brought at the sale.

(2) The second proposition, that the sale was collusive, is based upon the fact that prior to the sale there was a reorganization committee for the purpose of purchasing the property in bulk; that the trustees favored such reorganization; and that the order of sale permitted the trustees to receive, as part of the purchase price, admitted securities constituting liens upon the property.

That there should be a reorganization agreement for the purpose of buying in the property of the bankrupt corporation cannot be objected to. In fact, it furnishes the only way that a large diversified property and plant like that of the Southern Steel Company can be sold and purchased without disastrous results to creditors and stockholders, and the creditors have every right to organize themselves for the purpose of protecting their interests. These are propositions that need neither argument nor authority to support.

That the trustees should in good faith encourage and approve a plan which looked to the successful settlement and winding up of the bankruptcy estate, and which met the approval of creditors and had the consent of all classes interested, was perfectly proper. See Cook on Corp. vol. 3, p. 3189; Platt v. Philadelphia R. R. (C. C.) 65 Fed. 872.

The reorganization agreement set forth in the record as approved by the trustees provided for the mortgage and lien holders and the unsecured creditors and all stockholders, both common and preferred; and it was assented to by all of the first mortgage bondholders, 99¾ per cent. of the collateral trust note holders, 86 per cent. of the proved claims, 87 per cent. of the preferred stockholders, and 90 per cent. of the common stockholders.

Such a reorganization agreement seems so fair on its face that the court itself could well have approved it if brought before it in proper way; in fact, it seems to have all the elements of a composition which is favorably provided for in the bankruptcy law.

(3) The third proposition, asserting that the said sale was made

without an upset price having been fixed in the order of sale, is not sound. We are not shown any law which requires that an upset price should be fixed in orders of sale in bankruptcy. The law does provide that real and personal property, when practicable, shall be sold subject to the approval of the court, and shall not be sold otherwise than subject to the approval of the court for less than 75 per centum of the appraised value. That sometimes in equitable proceedings, generally with, although sometimes without, the consent of parties, an upset price is fixed, furnishes no reason for us to hold as a matter of law that an upset price other than the one fixed in the statute should have been fixed in this case; and, in this connection, we may say that, in adjudged cases wherein an upset price has been fixed, it was not a matter of law at all, but a matter of equity within the sound discretion of the court.

(4) The fourth proposition, that the terms of sale were unequal and unfair, and competition was thereby stifled, is based upon the fact that the purchaser was permitted by the terms of the order of sale to turn in, in payment of the price, admitted securities; the argument being that the holders of securities could buy without paying cash, while an outsider would be compelled to pay cash.

The contention in this case seems to disregard the general rule which prevails in all foreclosure and execution sales wherein it is not deemed proper and necessary to require purchasers to put up cash with one hand to take it down with the other. See Cook on Stock & Stockholders, vol. 2, § 887.

(7) The seventh proposition, urging the objection that there was no proof made of the correctness of the claims allowed by the order of sale to be deposited on account of the purchase price and no opportunity offered parties in interest to contest the same, does not seem to merit much consideration. As the referee formally allowed the claims in question, we may well presume that he had sufficient evidence before him; but it is not necessary to rest on such presumption, because the record shows that the trustees admitted the claims, and no one contested them, and all through the record their validity stands out as one of the undisputed facts in the case. And the record nowhere shows that time was asked.

(9) "That the said sale was absolutely unfair, illegal, and void." To determine as an ultimate proposition that the sale was unfair, illegal, and void would require, in the absence of an agreed statement of facts or finding of facts by the referee or court, a consideration of all the evidence in the record entirely beyond the inquiries this court can make on a petition for revision in matters of law.

This disposes of all the counsel's propositions, with the exception of the fifth, sixth, eighth, and tenth, which entirely relate to matters that were within the sound discretion of the bankruptcy court, and we have nothing before us to show that the discretion of the court was abused to the injury of any creditor or stockholder.

As to the denial of the petition of Samuel I. Knight to intervene, it may also be said that practically he was allowed to intervene, and his contentions have been presented to and disposed of by this court.

For the reasons herein given, the petitions to revise in Nos. 1,924, 1,925, and 1,939 are denied, and the appeals in Nos. 1,992, 2,001, and 2,029 are dismissed, all with costs.