*Judgments will be entered under Rule 50.*

WILLIAM L. TAYLOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88439.  Promulgated June 15, 1938.

*William L. Taylor, Esq.*, pro se.
*Jonas M. Smith, Esq.*, for the respondent.

OPINION.

KERN: The question to be determined by us in this proceeding is whether the owner of stock of a railroad corporation, the assets of which are less than its bonded obligations, may claim a loss on account of the worthlessness of his stock as sustained in the year in which the railroad corporation files a voluntary petition in bankruptcy with a United States District Court pursuant to the provisions of section 77 of the Bankruptcy Act, as amended, and the court appoints trustees in bankruptcy to take over the railroad and its operation pending a reorganization. A more narrow statement of the question is whether such bankruptcy proceedings involving a railroad corporation may constitute an "identifiable event" fixing the worthlessness of stock to the extent that a loss resulting therefrom may be deducted from gross income pursuant to section 23 (e) of the Revenue Act of 1932, set out in the margin.[1]

It is respondent's contention that the bankruptcy proceedings authorized by this amendment to the Bankruptcy Act contemplate a reorganization of the railroad corporation which files such a petition and a continued operation of the railroad property pending the bank-

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\*          \*          \*          \*          \*          \*          \*

(e) LOSSES BY INDIVIDUALS.—Subject to the limitations provided in subsection (r) of this section, in the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise \* \* \*.

ruptcy proceedings and subsequent thereto, that the value of the securities of the railroad corporation can not be determined until the plan of reorganization contemplated by the act has been approved by the court administering such bankruptcy, and that therefore, the filing of a petition in bankruptcy by the railroad corporation and the appointment of trustees to take over its property can not constitute an "identifiable event" by reason of which the worthlessness of stock in such a railroad corporation may be fixed.

A railroad corporation differs from the ordinary commercial or industrial corporation in certain important respects. It is a public utility and the public has an interest in its continued operation and the rendering by it of service to the public. Therefore, it may not cease operation and dismantle its plant without the consent of the state, and this consent will not, ordinarily, be given where the public wants and exigencies require the continued operation of the railroad. *Ft. Smith Light Co.* v. *Bourland*, 267 U. S. 330; *Bullock* v. *Florida*, 254 U.·S. 513. Neither was it entitled to relief under the Bankruptcy Act, except under section 77, added by the Act of March 3, 1933. See Bankruptcy Act of July 1, 1898, as amended June 25, 1910, §§ 3, 4. As a result, a railroad corporation which is in financial difficulties does not cease business and does not liquidate in the same manner as a private corporation, using the cash proceeds of a public sale to satisfy its creditors and the residue, if any, for the benefit of its stockholders. It is true that the same legal formalities are frequently used, such as the appointment of a receiver by a court of equity for its property and a foreclosure sale, but the practice in such cases is for holders of the underlying securities of the railroad corporation, secured by mortgage on its property, to use such securities in purchasing the property at foreclosure sale as a step in the reorganization of the railroad, with the result that there is not complete liquidation of the property of the railroad corporation but merely a liquidation of the securities of the railroad corporation not participating in the reorganization and a readjustment of the capital structure of the company. Cf. *Investment Registry Ltd.* v. *Chicago & M. E. R. Co.*, 212 Fed. 594, 609; *Schuler* v. *Hassinger*, 177 Fed. 119; *Easton* v. *German-American Bank*, 127 U. S. 532; *Canada Southern Railway Co.* v. *Gebhard*, 109 U. S. 527.

This device of reorganization of railroad corporations by foreclosure sales and equity receiverships was developed over a period of some fifty years until a well recognized technique was established. See Paul D. Cravath, Reorganization of Corporations; Stetson, Byrne, et al., Some Legal Phases of Corporate Financing, Reorganization and Regulation, 153. However, there remained many troublesome questions incident to this method of reorganization, such as upset price,

nonparticipating minority bondholders, and the safeguarding of the rights of unsecured creditors. Even as early as 1883 the Supreme Court of the United States, in *Canada Southern Railway Co.* v. *Gebhard, supra*, suggested the advisability of modifying the Bankruptcy Act to permit the reorganization of common carriers by a method similar to the English procedure of "Arrangements" provided for by Railway Companies Act, 1867, 30 and 31, Vict. c. 127, described by Lord Cairns in Cambrian Railway Co.'s Scheme, L. R. 3 Ch. App. 278, 294. The difficulties incident to reorganization of railroad corporations by equity receiverships and foreclosure sales eventually led to the enactment of section 77 of the Bankruptcy Act, involved in this proceeding.

While it is true, as respondent contends, that bankruptcy proceedings under this section are intended to be a method for arriving at a reorganization of a railroad corporation, it is also true that the nature of a railroad as a public utility has precluded, except in extraordinary cases, any procedure other than reorganization in cases of over-capitalized and nonprofitable railroads in financial distress. There is seldom any real liquidation of railroad properties or cessation in the conduct of their operation comparable to a liquidation or cessation from doing business which is usually the "identifiable event" fixing the worthlessness of stock in private corporations. There is merely the readjustment of the securities issued by the railroad corporation to more accurately represent the real value of the railroad property as of the date of the approval of the plan of reorganization.

In the case of private corporations which are hopelessly insolvent and go into receivership or bankruptcy, we anticipate the liquidation of the assets at a sum less than the liabilities and permit the loss by reason of the worthlessness of their stock to be deducted in the year in which the receiver or trustee in bankruptcy takes over the property for ultimate liquidation. *Jeffery* v. *Commissioner*, 63 Fed. (2d) 661. In the case of a railroad corporation which is hopelessly insolvent with liabilities far in excess of its assets, and earnings far less than required to pay interest on its bonded indebtedness, we may assume that any plan of reorganization finally approved by the Interstate Commerce Commission and the judge administering the bankruptcy estate will reflect an absence of any equity to stockholders, and may, therefore, permit a loss by reason of the worthlessness of such stock to be deducted in the year in which trustees in bankruptcy were appointed by the court to take over the property of the railroad corporation pursuant to the provisions of section 77 of the Bankruptcy Act.

In the instant case, the uncontradicted testimony of the petitioner was to the effect that the long term indebtedness of the Chicago, Indianapolis & Louisville Railway Co. was about $42,000,000, that the value of its property as assessed for taxation was $12,466,424.11, that

under no circumstances could its property be sold for a sum sufficient to pay the principal of its mortgage bonds outstanding, that it was in default in large sums in the payment of interest on its bonds, and that, by reason of the fact that it was largely a coal railroad and motor trucks were increasingly used in transporting coal from the mines, there was no hope that it would pay even the interest on its bonds. Under these circumstances, we can not avoid the conclusion that the Chicago, Indianapolis & Louisville Railway Co. was insolvent in 1933, and the stock in that company owned by petitioner was worthless. There could be no reasonable hope in that year or subsequent years for a return of value to this stock.

The appointment of trustees in bankruptcy for the Chicago, Indianapolis & Louisville Railway Co., under section 77 of the Bankruptcy Act, marked the end of the carrying on of its business by the company and operations under its existing corporate financial structure. Thereafter, it would be operated by the trustees in whom the control of its property was vested by the Bankruptcy Act until a plan of reorganization should be approved by the court. That plan of reorganization could not create an equity in the stockholders which did not exist by reason of the value of the corporate assets, without the consent of the bondholders and other creditors having priority with regard to the assets of the company. While the different classes of secured creditors might make certain concessions as to each other, it is hardly within the realm of possibility that they would collectively consent to such a paring down of their claims as to create any equity for the stock. The value of the corporate assets, either actual or potential, was less than the secured claims and was not sufficient therefore to give value to the company's stock.

The filing of the petition in bankruptcy under section 77 of the Bankruptcy Act by the Chicago, Indianapolis & Louisville Railway Co. and the appointment of trustees for its property by the court in such proceedings in 1933, constituted an "identifiable event" by reason of which the worthlessness of stock in that company might be determined in that year. Since petitioner's stock was worthless in that year, our finding will be in favor of petitioner on the issue presented in this case.

*Decision will be entered under Rule 50.*