### In re BRENNER.

(District Court, M. D. Pennsylvania. September 13, 1911.)

#### No. 1,829.

1. BANKRUPTCY (§ 136*)—REFEREES—AUTHORITY TO RECONSIDER ORDER.
Where an order of a referee requiring a bankrupt to turn over property to his trustee was based on a mistake of fact, he has power, on petition of the bankrupt, filed within the time limited for review of his decision, and the mistake being shown, to reconsider and set aside such order.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

190 F.—14

2. BANKRUPTCY (§ 228*)—FINDINGS OF REFEREE—REVIEW.
 Findings of a referee, based on the testimony of witnesses appearing before him, should not be overruled, unless manifestly erroneous and flagrantly against the weight of testimony.
 [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 228.*]

In the matter of James N. Brenner, bankrupt. On review of order of referee, made on petition to require the bankrupt to turn over property to his trustee. Affirmed.

Myer Rosenbush, for petitioner.
Elmer W. Ehler and W. Justin Carter, opposed.

WITMER, District Judge. The referee on June 3, 1911, made and filed an order requiring the bankrupt to pay over $2,000 to the trustee. This order was based upon the assumption of the fact, forming the basis of the calculation upon which the referee rested his order, that certain claims filed with the referee, up to February 25, 1911, for merchandise sold to bankrupt and delivered to him since September 1, 1910, aggregated $9,200. This total or calculation of such claims was offered by one of the creditors and accepted by all parties in interest without verification, and adopted by the referee in his calculation, as follows:

Stock of merchandise found by referee August, 1910.............$ 2,000 00
Merchandise received from September 1, 1910, to January 27, 1911, as shown by claims filed up to February 25.................. 9,200 00
Merchandise purchased since September 1, 1910, as shown by claims filed since February 25, 1911........................... 2,081 93

Total of merchandise shown to have been in possession of bankrupt since September 1, 1910.........................................$13,281 93
The referee finds that the bankrupt has accounted for assets of this total........................................................ 10,347 37

Leaving to account for a balance.................................$ 2,934 56

After the filing of the order, but within the period allowed by rule for review, the bankrupt, on June 13, 1911, filed with the referee his petition for review of such order, and likewise filed a motion for the opening of the order, averring that the total of claims filed with the referee, up to date, for merchandise delivered to him since September 1, 1911, as appeared by a strict footing of all such bills filed, showed only an aggregate or total of $9,174.30, and not the sum of $13,281.93, as supposed.

[1] At a hearing before the referee on June 17th it was found by the referee, and conceded by the trustee and his counsel, who also then, as now, represents the petitioning creditors, that, in the language of the referee, "the merchandise claims filed up to February 25, 1911, amount to $6,162.42, and not $9,200, as heretofore accepted by everybody concerned." The referee in his report further says, "And the trustee and his counsel admitted the above statements to be correct," concluding as follows:

"The referee having found that the bankrupt had failed to account for $2,934.56, and it now being shown that he was improperly charged with over

$3,000 more merchandise than the claims actually show, the structure based on such error, being now deprived of its foundation, falls. I am not unmindful of the character of the bankrupt's testimony, and the facts and circumstances alluded to in the former opinion, and I have not changed my opinion therein; but a surcharge, if made, must be based on substantial evidence, not on suspicion, however strong, nor by way of punishment. Neither do I think that the few claims filed since the calculation, nor the few that remain unfiled, would add such sufficient amount to warrant an order requiring the bankrupt to pay over. Under this state of facts, where a clear, palpable error has been made, and, the truth being made known, an entirely different result appears, ought the judge to be burdened with the work of reviewing this case and reversing the order made by the referee, which action I should recommend, or has the referee the power to open and set aside his former order? I believe the latter course is the proper practice under the circumstances disclosed herein, and I will adopt it. It is accordingly ordered that the petition for review of the order of the referee herein, requiring the bankrupt to pay the sum of $2,000 to his trustee, which was filed June 3, 1911, be denied, and that the motion to open the said order be and the same is hereby granted, that the said order be and the same is hereby set aside and annulled, and the prayer of the petition that the bankrupt be surcharged is hereby refused."

We are not convinced that the referee exceeded his authority in correcting, in manner appearing, the order made and entered, based on facts in his possession clearly showing to have been founded on palpable error induced by parties other than the person aggrieved. In this conclusion we are strengthened, bearing in mind that the party aggrieved moved the referee to the effect within the time limited for review of his decision by the District Judge. Furthermore, the admissions and conclusions of the parties, before the referee, referring to this vital and most flagrant error, practically amounted to an agreement calling for the revocation of the order, and the exercise, I take it, of such equitable relief as the circumstances of the case required.

The District Judge would surely not hesitate to annul or set aside an order founded on admitted mistake of facts; and, being groundless, it was practically no order at all. It will be remembered, furthermore, that the bankruptcy court is a court of equity in matters over which it exercises jurisdiction (In re Huddleston, 1 Am. Bankr. Rep. 572), and that equity will interfere in cases of mistake in judgment and other matters of record injurious to the rights of the parties. Gump's Appeal, 65 Pa. 476; 1 Story's Eq. Jur. § 166; Colwell v. Warner, 36 Conn. 224; Wheeler v. Kirtland, 23 N. J. Eq. 13, 15.

Again, where the bankruptcy court has jurisdiction, the referee has also jurisdiction, except when the case is referred to him for a special purpose, or where the bankrupt asks to be adjudged a bankrupt, or seeks a discharge from bankruptcy. Bankruptcy Act July 1, 1898, c. 541, § 38 (4), 30 Stat. 555 (U. S. Comp. St. 1901, p. 3436).

The court is further requested to determine whether, under all the circumstances and facts of the case, any order ought to be made requiring the bankrupt to pay a sum of money to his trustee for the value of assets alleged to be withheld.

It is insisted that the referee has erred in his conclusion that the stock of merchandise on hand August, 1910, was of the value of but $2,000, claiming that such stock far exceeded this amount. This, in-

deed, is the only serious dispute now remaining to be noted. Referring to this subject, the referee says:

"This is the crucial point in the case, and I will proceed to examine carefully all the evidence thereon."

After a full rehearsal of the testimony, he concludes:

"The trustee asks that the value be fixed at $5,000, and it may well be that the evidence would justify such finding; but giving the bankrupt the benefit of every doubt, giving full weight to his statement that he had sold goods below cost, allowing liberally for depreciation, it seems to be impossible that the bankrupt could have had less than $2,000 worth of stock August, 1910, and in all probability he had more; and the referee will find said value to be the sum of $2,000."

[2] Applying here the rule that findings of a referee, drawn from the testimony of witnesses appearing before him, should not be overruled, unless manifestly erroneous and flagrantly against the weight of the testimony, influences the court by no means to change the learned referee's conclusions. It is true that the conduct of the bankrupt as a witness cannot be justified; but it does not appear that his testimony influenced to any degree the findings of the referee. It no doubt excites suspicion, but it does not amount to proof of property in his possession warranting an order that may result in imprisonment for contempt.

The order of the referee is affirmed.