In re CHARLES KNOSHER & CO.

WESTERN DRY GOODS CO. et al. v. BAXTER et al.

(Circuit Court of Appeals, Ninth Circuit. June 3, 1912.)

No. 2,050.

1. BANKRUPTCY (§ 439*)—APPELLATE PROCEEDINGS—MODE OF REVIEW.

Where the facts upon which an order of a court of bankruptcy was based are not in controversy, but their legal import only, and the order

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

is one of the regular steps in the bankruptcy proceedings, it is reviewable on petition to revise in matter of law under Bankr. Act July 1, 1898, c. 541, § 24b, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3432).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. § 439.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

**2.** BANKRUPTCY (§ 269*)—SALE OF PROPERTY—PROCEEDINGS BY CREDITOR TO SET ASIDE.

The property of a bankrupt corporation, consisting of a large stock of merchandise, was sold, the sale confirmed, the price paid, and the purchaser went into possession, and sold a large part of the stock at retail with other goods. *Held*, that a creditor could not maintain a petition for a summary order setting aside the sale, and requiring the purchaser to turn over the remaining property and the proceeds of that sold, on the ground that through a conspiracy between the purchaser and former employés of the bankrupt the stock was purchased for a grossly inadequate price, the remedy in such case, if any, being by a plenary suit by the trustee for an accounting, and there being no allegation of collusion on his part, or that he had been requested to bring such a suit, nor that any tender had been made to the purchaser or was practicable.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 370; Dec. Dig. § 269.*]

**3.** BANKRUPTCY (§ 368*)—RECEIVERS—COMPENSATION—"CONDUCT BUSINESS."

A receiver in bankruptcy who took possession of, advertised, and sold the property of the bankrupt, consisting of a stock of merchandise, was more than a mere custodian, and entitled to compensation accordingly under Bankr. Act July 1, 1898, § 48d, as added by Act June 25, 1910, c. 412, § 9, 36 Stat. 840 (U. S. Comp. St. Supp. 1911, p. 1502), but where he kept the store open only during the remainder of the day on which he took possession, while a special sale then in progress was continued by the employés of the bankrupt, after which he closed the store, and sold the stock in bulk, he did not "conduct the business" of the bankrupt in such sense as to entitle him to additional compensation under subdivision "e" of said section.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. § 368.*

For other definitions, see Words and Phrases, vol. 2, pp. 1415–1417.]

Petition for Revision of Proceedings of the District Court of the United States for the Northern Division of the Western District of Washington, in Bankruptcy.

In the matter of Charles Knosher & Co., a corporation, bankrupt. On petition of the Western Dry Goods Company and others to review orders of the District Court. Modified and affirmed.

On the 27th day of February, 1911, Charles Knosher & Co., a corporation engaged in general merchandise and department store business in the city of Seattle, Wash., was adjudged bankrupt in an involuntary proceeding brought for that purpose in the District Court of the United States for the Western District of Washington, the adjudication being had upon a petition alleging bankruptcy, and an answer admitting the same. Thereupon, and on the same day, Sutcliffe Baxter, upon the choice of the creditors, was appointed receiver by the court, and qualified and took possession of the property of the bankrupt. On March 20th he was elected trustee by the creditors, and continued to act as such.

On the 27th of February, when the receiver took possession of the estate of the bankrupt, consisting of goods, wares, and merchandise held for sale,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

there was a clearance sale going on. He allowed this sale to go on until the close of business on that day, then closed the store, and at once began to take an inventory. The inventory was begun on February 27th, and completed March 6th. In taking this inventory the receiver found that the merchandise was marked only with the retail selling price, there being nothing to show the original cost price; that in fixing the price no specific percentage had been added to cost, the merchandise being offered for sale at a profit ranging from 25 to 100 per cent., so that it was not practicable to ascertain original cost by deducting a certain definite percentage to be regarded as profit from the marked selling price of the goods.

After the filing of the inventory and on March 9, 1911, the referee in bankruptcy appointed three appraisers, who made a formal but not an actual appraisement of the property shown in the inventory, and filed their report of the appraisement on the same day in the office of the referee of bankruptcy. The value of the stock was returned by the appraisers at $42,214.87. Thereafter the referee made an order of sale, and the sale was set for March 13th upon sealed bids. Among the bids received was one for $50,027. The receiver adjudged the bids insufficient, and they were rejected, and new bids were called for and opened on the 15th. Among these bids was that of the respondent in this case, John Anisfield Company, whose bid was $57,000, which was received and accepted, and the stock of merchandise was sold to him in bulk on March 16, 1911.

On April 20, 1911, the Western Dry Goods Company and other creditors of the bankrupt filed their petition, and on April 26, 1911, their amended petition with the referee reciting the proceedings that had been had in the case, and alleging that the employés of the bankrupt had fraudulently conspired with John Anisfield Company for the purpose of deceiving the officers of the court, and had made up an inventory of the stock of goods, wares, and merchandise belonging to the bankrupt, which were sold for an amount greatly less than the fair market wholesale value of said stock, and greatly less than the actual market value thereof; that, in pursuance of the conspiracy, the employés of the bankrupt advised the John Anisfield Company of the actual value of the stock, but concealed the information from all others; that the receiver and trustee accepted the said false and fraudulent inventory as true, and, upon the assumption that said inventory did represent the true value of said stock, the said appraisers did return their appraisement into court; that John Anisfield Company had taken possession of said estate, and since the date thereof had been selling the same at special bankrupt sale, and, as petitioners were informed and believed, had realized the sum of $50,000, and was threatening to sell the remainder of the stock to an innocent purchaser, and remove the same from the jurisdiction of the court.

The prayer of the petition was that the appraisement, order of sale, and confirmation of sale be set aside, and that the John Anisfield Company be required to pay into the registry of the court the money theretofore received by them out of the estate of the bankrupt, and that the stock remaining on hand and unsold be returned to the possession of the receiver. The petition also prayed for an injunction commanding the said John Anisfield Company, their agents and representatives, from selling, removing, disposing of, or in any way interfering with the remainder of said stock of the bankrupt then in their hands and under their control. The petition was supported by the affidavits of Eugene G. Anderson, the president and treasurer of the Western Dry Goods Company, and Ole A. Kjos, one of the appraisers appointed by the referee in bankruptcy  Both affidavits refer to conversations with two employés of the bankrupt, Henderson and Barr, in which it was stated by them that the inventory was reduced in the value and quantity of the stock and the information as to such reduction in value and quantity conveyed to John Anisfield Company, so that they might purchase the stock at a grossly inadequate value, and thereby realize enough to pay their own claim in full and return the balance to the bankrupt.

To this petition John Anisfield Company interposed the objection that the court had no jurisdiction to entertain the petition, because of the facts appearing of record in the case showing the proceedings therein. This petition came on to be heard before the referee in bankruptcy, together with objections made thereto. The objections were sustained, and the prayer of the petition denied and the petition dismissed.

A petition for review was taken to the District Court upon the return of the referee showing that the objection to jurisdiction had been sustained by the referee for two reasons: First. That there was no allegation in the original or amended petition of any improper conduct on the part of the trustee of the estate, or of his attorneys. Second. That it was not alleged that there had been any demand made upon said trustee or his attorneys by the petitioning creditors that said trustee should proceed against the said John Anisfield Company to obtain the relief sought by said petitions, or any other relief, in the interests of all the creditors. Without passing upon the question of jurisdiction, the District Court proceeded to consider the petition upon its merits upon a hearing upon affidavits, and upon such hearing the court denied the petition.

On March 20th, the receiver having filed a report of his proceedings, an order was entered approving his report, and making an allowance to the receiver of $2,500 with a like sum of $2,500 to his attorneys. It later appearing that this allowance to the receiver and his attorneys had been made without notice to the creditors, an order was made requiring the receiver to make application for his allowance and give notice of such application, which was done. On July 10, 1911, the matter was submitted to the court for its determination, and as a basis for this determination it was stipulated by the parties to the proceedings that the total amount of cash actually disbursed by Baxter as receiver was $61,312.87, and the total amount of cash received by him as trustee, and then being disbursed was $54,496, and that said cash amounts were the sums to be considered by the court in determining the matter of the compensation of the receiver and trustee, and the attorneys of the receiver and trustee. Thereafter, on September 23, 1911, the court determined that Baxter as receiver had conducted the business of the bankrupt, and was entitled to compensation as receiver on the sum of $61,312.87 for the performance of his ordinary duties as such receiver at the rate prescribed in section 48d of the Bankruptcy Act, and that he was entitled to extra compensation at the same rate under section 48e on said sum, $61,312.87, for conducting the business of the bankrupt as receiver, and that Baxter was entitled to compensation on said sum of $54,496 for his services as trustee of said estate up to the date of the final submission of the matter at the rate prescribed in section 48a of the Bankruptcy Act, and that the attorneys of the receiver and trustee were entitled to an equal amount for their services up to the date of the submission of the matter to the court.

Thereupon the court made an order allowing the receiver and trustee $2,201.20, and allowing a like sum of $2,201.20 to the attorneys for such receiver and trustee in full of all services rendered up to the date of the final submission of the matter to the court.

The questions involved in these proceedings are brought here by petition for review under section 24b of the Bankruptcy Act.

Nelson R. Anderson and Hughes, McMicken, Dovell & Ramsey, all of Seattle, Wash., for petitioners.

Harold Preston and O. B. Thorgrimson, both of Seattle, Wash., for respondent John Anisfield Co.

Leopold M. Stern, Walter A. McClure, and McClure & McClure, all of Seattle, Wash , for all other respondents.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1] The respondents (not including John Anisfield Company) have filed their motion to dismiss the petition on the ground that the questions are reviewable only by appeal, and because the determination of this case involves a consideration of evidence and a determination of disputed questions of fact.

Section 24b of the Bankruptcy Act provides as follows:

"The several Circuit Courts of Appeal shall have jurisdiction in equity, either interlocutory or final, to superintend and revise in matter of law the proceedings of the several inferior courts of bankruptcy within their jurisdiction. Such power shall be exercised on due notice and petition by any party aggrieved."

The effect of bringing the proceedings of the District Court to this court for revision under this section is to limit the review to matters of law. Where facts are to be reviewed the proceedings must be brought here by appeal or writ of error. The facts recited in these proceedings and material to the question at issue do not appear to be in doubt, or, at most, they are not a subject of controversy upon this petition for review. The only controversy is as to their legal import in the bankruptcy proceedings. Such questions may be reviewed upon a petition for revision. In re Lee, 182 Fed. 579, 105 C. C. A. 117; In re Frank, 182 Fed. 794, 105 C. C. A. 226; Coder, Trustee, v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008.

In Schuler v. Hassinger, 177 Fed. 119, 100 C. C. A. 539, the Circuit Court of Appeals for the Fifth Circuit had before it appeals and petitions for revision involving, among other questions, the objection that the property of the bankrupt had been sold for a grossly inadequate sum, and the objection that the sale was collusive, and was absolutely unfair, illegal, and void. The appeals were dismissed, and the questions reviewed upon the petition for revision. The same construction of the statute applied in that case sanctions the review of the questions presented by the petition for revision in this case. The motion for the dismissal of the petition is therefore denied.

[2] The first question to be considered upon this review of the proceedings is the sufficiency of the amended petition filed with the referee in bankruptcy by the Western Dry Goods Company, and other creditors, praying that the appraisement, order of sale, and sale of the stock of goods of the bankrupt estate be set aside, and that John Anisfield Company be required to pay into the registry of the court the money received by them out of the estate of the bankrupt, and that the stock remaining on hand and unsold be returned to the possession of the receiver. The objection to this petition was in the nature of a demurrer, raising the question as to its sufficiency. No improper conduct is charged in the petition against Baxter, the receiver, or against Baxter, afterwards the trustee, or against his attorneys. It is not alleged that demand was ever made by the complaining creditors upon the trustee to recover the property of the

bankrupt estate, or its value from John Anisfield Company. It appears that at the time the amended petition was filed the sale of the bankrupt property had been made by the bankruptcy court, and the sale had been confirmed; that the purchaser had gone into possession of the property, had disposed of about one-half of the stock purchased, together with new stock mixed with the bankrupt stock; that the purchase price had been paid, and about one-half of the purchase money had been distributed by the trustee to the creditors as dividends, and for the expenses of administration; that no tender had been made to the purchaser of the purchase price, and no tender appears to have been practicable under the circumstances, and no surety or indemnity had been offered the purchaser. It is clear that, if the creditors of the bankrupt were entitled to any relief by reason of the alleged inadequacy of the price received for the stock of goods, it was not by summary proceedings, but should have been obtained through the trustee in an action against John Anisfield Company for an accounting, and if the trustee and his attorneys were hostile to the proceeding, as intimated, but not established, he could have been required by order of the bankruptcy court to permit the use of his name in such an action with new attorneys, or, failing in that, the trustee could have been removed and a new trustee appointed with new attorneys instructed to proceed by proper action to determine the rights of the bankrupt estate in a plenary action. We think the petition and amended petition were insufficient and properly dismissed by the referee.

[3] It is next objected that the allowance of compensation to the receiver and trustee and to his attorneys were in excess of the compensation provided by the statute. Section 48a of the Bankruptcy Act, as amended by Act June 25, 1910 (36 Stat. 838, 840), provides:

"Sec. 48. Compensation of trustees, receivers and marshals.

"(a) Trustees shall receive for their services, payable after they are rendered, a fee of five dollars deposited with the clerk at the time the petition is filed in each case, * * * as may be allowed by the courts, not to exceed six per centum on the first five hundred dollars or less, four per centum on moneys in excess of five hundred dollars and less than fifteen hundred dollars, two per centum on moneys in excess of fifteen hundred dollars and less than ten thousand dollars. * * *

"(d) Receivers or marshals appointed pursuant to section two, subdivision three, of this act shall receive for their services, payable after they are rendered, compensations by way of commissions upon the moneys disbursed or turned over to any person, * * * as the court may allow, not to exceed six per centum on the first five hundred dollars or less, four per centum on moneys in excess of five hundred dollars and less than one thousand five hundred dollars, two per centum on moneys in excess of one thousand five hundred dollars and less than ten thousand dollars: Provided * * * that when the receiver or marshal acts as a mere custodian and does not carry on the business of the bankrupt as provided in clause five of section two of this act he shall not receive or be allowed in any form or guise more than two per centum on the first thousand dollars or less, and one-half of one per centum on all above one thousand dollars on moneys disbursed by him. * * *

"(e) Where the business is conducted by trustees, marshals, or receivers, as provided in clause five of section two of this act, the court may allow such

officers additional compensation for such services by way of commissions upon the moneys disbursed or turned over to any person, * * * such commissions not to exceed six per centum on the first five hundred dollars or less, four per centum on moneys in excess of five hundred dollars and less than one thousand five hundred dollars, two per centum on moneys in excess of one thousand five hundred dollars and less than ten thousand dollars, and one per centum on moneys in excess of ten thousand dollars."

Under this statute the court allowed the receiver under section 48d on the stipulated amount disbursed by him from February 27th to March 20th, namely, on $61,312.87, the following amounts:

| | |
|---|---:|
| Deposit | $ 5 00 |
| $500 at 6 per cent. | 30 00 |
| $1,000 at 4 per cent. | 40 00 |
| $8,500 at 2 per cent. | 170 00 |
| $51,312.87 at 1 per cent. | 513 12 |
| Making a total of | $758 12 |

The court also allowed the receiver under section 48e an additional compensation for conducting the business on the percentages, as above (excluding deposit of $5) the sum of $753.12, making a total of $1,511.24.

The court also allowed the trustee under section 48a on the stipulated amount of cash received, and the amount then being disbursed by him, from March 20th to date of final submission, namely, $54,496, as follows:

| | |
|---|---:|
| Deposit | $ 5 00 |
| $500 at 6 per cent. | 30 00 |
| $1,000 at 4 per cent. | 40 00 |
| $8,500 at 2 per cent. | 170 00 |
| $44,496 at 1 per cent. | 444 96 |
| Making a total of | $ 689 96 |
| Total compensation for receiver | $1,511 24 |
| Total compensation for trustee | 689 96 |
| Total amount allowed receiver and trustee | $2,201 20 |

The court also allowed the attorneys for the receiver and trustee as part of the cost and expense of administration a like amount, namely, $2,201.20.

The objection urged against these allowances is that the evidence does not support the conclusions reached as to the legal compensation to which the receiver and trustee and his attorneys were entitled under the law. There is no question as to the service rendered by the receiver. The question is as to the compensation which the receiver was entitled to receive for the service rendered. In the receiver's report to the court, dated March 20, 1911, as to his administration of the estate, he stated, among other things:

"The alleged bankrupt turned over the premises to me, and gave me complete charge thereof. I found that the bankrupt was a corporation engaged

In the operation of a department store at the time I took possession of said premises. The store was filled with customers who were attending a sale which had previously been extensively advertised. I thought it advisable to permit the business to remain open and the sale to go on for the balance of the day, and accordingly permitted the said store to remain open. During the day I consulted with numerous creditors and representatives as to the advisability of continuing the business at retail, and, after such consultation, it was agreed by all parties, and it was also my own judgment, that it would be best to close the store at the conclusion of the day's business, and proceed at once to take an inventory of all the property."

In Mr. Baxter's affidavit, filed in the District Court on June 19, 1911, he sets forth the same facts as to the closing of the store on the day of his appointment as receiver. It does not appear from this report that the receiver conducted the business of the bankrupt even for the part of one day. What he did was to permit the employés of the bankrupt concern to go on with the business during the remainder of that day. The store was then closed, and was not again opened, except to deliver the stock in bulk to John Anisfield Company. Clause 5 of section 2 of the Bankruptcy Act provides that the courts of bankruptcy are invested with jurisdiction to "authorize the business of bankrupts to be conducted for limited periods by receivers, the marshals or trustees, if necessary in the best interests of the estates and allow such officers additional compensation for such services as provided in section forty-eight of this act." We do not think that the continuing of the business of the bankrupt by his employés for the remainder of one day constituted the carrying on of the business by the receiver within the meaning of the statute. On the other hand, we think the receiver was something more than a custodian, and that he was entitled to compensation as receiver under section 48d. We shall, therefore, disallow the additional compensation to the receiver of $753.12 for conducting the business of the bankrupt. Deducting this amount from the amount allowed, $2,201.20, the allowance for the receiver and trustee will then be $1,448.08.

The petitioners contend that no allowance should be made to the attorneys employed by the receiver and trustee for the bankrupt estate for the reason that no showing is made as to the value of their services. The employment of attorneys for a bankrupt estate is largely a matter of discretion in the court, and the value of the services is a matter generally known to the court. The showing made in opposition to the allowance would call upon this court to consider and determine facts which as we have stated we cannot do on this petition for revision. We are limited to questions of law. The court appears, however, to have been of the opinion that the attorneys for the receiver and trustee were entitled to receive the same compensation as the receiver and trustee. Treating that as a finding of fact, it follows that the attorneys are entitled to receive for their services a sum the equivalent of the sum allowed the receiver and trustee, to wit, the sum here allowed of $1,448.08 in full for their services for the en-

tire period from the appointment of the receiver up to the period of the submission of their claim to the court.

The orders of the District Court will be modified as indicated, and, as thus modified, will be affirmed.