**In re RAINEY.**

District Court, D. Maryland. January 11, 1929.

No. 5276.

Theodore F. Brown and James E. Boylan, Jr., both of Westminster, Md., and Wendell D. Allen, of Baltimore, Md., for trustee.

Joseph D. Brooks and Edward O. Weant, both of Westminster, Md., for Bank.

WILLIAM C. COLEMAN, District Judge. There are two questions before the court: First, whether the trustee's sale of the bankrupt's real estate and buildings to the Farmers' & Mechanics' National Bank of Westminster should be ratified or set aside; and, second, whether E. O. Baker is entitled to have the trustee restrained from selling, as part of the bankrupt's property, certain machinery which he claims the bankrupt leased from him, and therefore does not own.

First. The court concludes that the objections of the bank to the ratification of the sale to it by the trustee of real estate and improvements belonging to the bankrupt, as a result of the order of this court dated June 21, 1928, must be overruled. It is true that a bankruptcy court may and should set aside a sale made by a trustee in bankruptcy, if there is any fraud, or such a material mistake as would result in injustice to a purchaser, if not corrected. In re Leigh (C. C. A.) 272 F. 678; Jacobsohn v. Larkey (C. C. A.) 245 F. 538, L. R. A. 1918C, 1176; In re Shea (C. C. A.) 126 F. 153. See, also, In re Kronrot (D. C.) 183 F. 653.

In the present case there is no claim of actual fraud, but the vendee asserts that it should not be required to complete the purchase, because the trustee has notified it that the machinery on the premises was not intended to be included in the sale, and, accordingly, was not so included, and that it is only entitled to the land and the buildings. The bank is not asserting that the trustee should be required to convey to it the machinery, but claims that the sale to it as reported to the court should be set aside, because of the aforegoing misunderstanding on its part as to what it was bidding for.

The order of court, pursuant to which the sale was made, is divided into two parts, one covering the parcels of land, and the other the machinery, equipment, and materials, exclusive of certain specified items. With respect to the land, there is no reference in the court order to the sale of personalty. The only descriptive words used are "lots or parcels of land," and "real estate and chattels real." In the advertisement for sealed bids, to be opened on September 18th, the property

is referred to as, first, "two lots with the improvement thereon"; and, second, a "lot" described, "with improvements." The size and location of the three lots are described, but no mention is made of machinery; nor in the bid of the bank, which was accepted, is there any mention of machinery, the bid being simply "for the real estate and leasehold estate * * *, for the two lots with the improvements thereon," and also "lot * * * with improvements." Reference is made to the various liens to which the property was subject pursuant to the terms of the advertisement of sale. The land and improvements, as well as the machinery in controversy, had all been advertised and placed on public sale on July 14, 1928; but no acceptable bid was received, and so all were withdrawn. The advertisement stated that the real estate and improvements, described as frame and metal buildings, would be offered first, and then the office fixtures and machinery, which were described with great particularity, and this method was followed. It appears that one or more of the bank's directors were present on this occasion. It further appears that the bank made no inquiry, at the time it bid for the property, as to whether or not the machinery was included, although its directors, or at least some of them, had seen the prior notice, nor did it make any claim for the machinery until after learning that the unsuccessful bidder had specifically claimed that its bid contemplated acquisition of the machinery.

Under all of the aforegoing circumstances, the court sees no reason for setting aside the sale. While it is true that the advertisement of sale could have been, and in fact should have been, more explicit in its terms, there is nevertheless no evidence in the case that the bank, at the time it bid, was misled as to what it would receive, or that the amount of its bid, $5,701, plus approximately $1,450 to pay off liens assumed by it, was not a fair price for the real estate and improvements, exclusive of the machinery. The parcels and improvements were appraised at $11,500, and the machinery at approximately $2,000.

■ The cases to which the court has been referred by counsel for the bank, of which Dudley & Carpenter et al. v. Hurst Miller & Co., 67 Md. 44, 8 A. 901, 1 Am. St. Rep. 368, is perhaps the leading one, do not control the present situation. The court does not question the general principles there laid down respecting fixtures, and their constructive annexation, which usually govern in conflicting claims of vendors and vendees. It is true in the Dudley Case the description in question

was scarcely broader than the description in the present instance, and yet it was held to embrace trade fixtures. But in the present case the additional circumstances above explained make it apparent to the court that the bank either knew, or must have known upon inquiry which ordinary prudence required it to make, that the machinery was being treated as an entirely separate and distinct matter; that is, that the plant was *not* being offered as an *entirety*. Under these circumstances, therefore, the court would not be warranted in releasing the bank from its obligation to accept and pay for the land and buildings according to the terms of its bid, exclusive of the machinery.

■ Second. The court concludes that the petition of E. O. Baker to have the trustee restrained from selling certain machinery must be dismissed, because the court finds that the agreement between the petitioner and the bankrupt, whereby the latter acquired the machinery, is a conditional sale contract, and not a lease, as claimed. The document in question recites that:

"We agree to lease" certain specified used machinery, including punches, dies, vices, etc., "valued at $812, for the term of three months. * * * We further agree to pay you $325 herewith, as partial security for the fulfillment of this agreement. The balance of the rental therefor in the sum of $487 shall be made in two monthly payments, of $243.50 each, and shall be secured by two promissory notes, each for $243.50, with interest at 6 per cent., the first of which is payable on the 9th day of February, A. D. 1928, and each succeeding note on the 9th day of each succeeding month thereafter. At the expiration of the term we agree to surrender to you the said machinery in good condition, you to return to us the amount deposited with you as security as hereinbefore mentioned, provided the terms of this lease have been complied with.

"We are to have the option after the expiration of this lease and after surrender of said machinery to purchase the same upon payment to you of the amount deposited as partial security." Then follow provisions for reclamation of the machinery in case of default in payment, or in the event of attachment or insolvency and so forth, including institution of bankruptcy proceedings, and for liquidated damages in any such event. It is further provided that all taxes and assessments are to be paid by the lessee.

The bankrupt made the initial payment, and paid or renewed the note falling due February 9, 1928, and renewed the remaining

note. In order to determine the true character of the agreement, it is necessary to look through form to substance. In the present case the rental of the machinery for three months, the full term of the lease, amounted to 60 per cent. of its entire value. A charge so disproportionate to the term of user in relation to the value of the articles, all of which were secondhand, in and of itself certainly suggests a sale.

Furthermore, the so-called rental payments, plus the original deposit, equal the total value of the machinery, nothing being required to be paid at the expiration of the term, at which time the bankrupt had the option of becoming the owner. There is nothing to indicate that the machinery would deteriorate to such an extent in so short a time, and when we consider that it was purchasable at the end of the three months for $325, namely, the sum deposited as partial security in the first instance, its purchase became virtually compulsory. True, the bankrupt had the option of returning the machinery at the end of the term, and of getting back the deposit; but as a practical matter it is difficult to imagine this being done, or that it was ever in fact contemplated. It seems to the court that these considerations outweigh any language to the contrary contained in the agreement. The distinction between an ordinary lease and a conditional sale is obvious. A lease contemplates only the use of the property for a limited time and the return of it to the lessor at the expiration of that time; whereas, a conditional sale contemplates the ultimate ownership of the property by the buyer, together with the use of it in the meantime. In the present case, the bankrupt could not terminate the transaction by returning the property at any time prior to the end of the term, and then, as just explained, the loss in so doing, made it virtually prohibitive. The court considers the Pennsylvania decisions to which it has been referred as an anomaly in the law. In a few states only, notably Mississippi and Pennsylvania, a different doctrine, contrary to the great weight of authority, is adhered to, and contrary to what the court believes to be the correct rule when applied in the light of the Maryland statute and decisions construing the same. At least the court has been referred to no Maryland decision, nor has it found any, which would lead it to believe that the Maryland doctrine is or should be different from that here announced. See Corbett v. Riddle (C. C. A.) 209 F. 811. See, also, Hervey et al. v. Rhode Island Locomotive Works, 93 U. S. 664, 23 L. Ed. 1003; Singer Sewing Machine Co. v. Cooper (D. C.) 263 F. 994; Williston on Sales, § 336, and cases cited.

It follows that the agreement is void as against the trustee in bankruptcy, because unrecorded as required by section 55 of article 21 of the Maryland Code. In re Rosen, 23 F.(2d) 687; In re Shipley, 24 F.(2d) 991 (decisions of this court), and cases therein cited. Accordingly, the petitioner is relegated to the position of a general creditor for any unpaid balance on the notes given under the agreement.

Orders will be signed in accordance with this opinion.