**SLOCUM et al. v. EDWARDS et al.**

No. 223, Docket 20932.

Circuit Court of Appeals, Second Circuit.

June 24, 1948.

Victor Levine, of Syracuse, N. Y.
(Smith, Sovik, Levine & Richardson and

Robert B. Anderson, all of Syracuse, N. Y., on the brief), for appellant Edwards.

Frank T. Sheridan, of Syracuse, N. Y., for appellant McCarthy.

Gordon H. Mahley, of Syracuse, N. Y. (McElroy, Young & Mahley, of Syracuse, N. Y., on the brief), for appellees.

Before SWAN, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This appeal turns upon the power of a bankruptcy referee, upon the reopening after some years of a closed bankruptcy estate, to set aside, on the ground of mistake, an order he had made during the bankruptcy administration confirming the sale of the bankrupt's interest in the estate of his deceased father. The matter is brought before us upon the appeal of the bankrupt and his present trustee from the district court's vacation of the referee's order for lack of jurisdiction.

On April 27, 1938, appellant Walker E. Edwards was adjudged a voluntary bankrupt and the proceeding was thereupon referred to Referee Wiles. The bankrupt's schedule listed creditors in the amount of $27,371.07 and no assets. Actually he was a legatee under the will of his father, Daniel M. Edwards, who had died in May, 1929. By this will, the testator had sought to provide for his wife and four children: the bankrupt, Walker E. Edwards; his brother, Eleazer Wells Edwards; and his two sisters, the present appellees, Mrs. Dorothy E. Slocum and Mrs. Mary E. Rodormer. Hence he had established a testamentary trust and directed the named trustees to pay from the income $5,000 yearly to each child, with the balance of the income to be paid to his widow. At the death of the latter, the principal was to be divided into equal shares corresponding to the number of the then living children, and each share was to be continued in trust for the benefit of a child until at his death it would pass to his next of kin free and clear of any trust. Daniel's widow died in September,

1945, and Eleazer Wells died without children and unmarried in April of the following year. At his death, therefore, there vested in each of the surviving sisters and brother a one-twelfth interest in the principal of the Edwards estate, amounting in value to upward of a million dollars each. Mrs. Slocum and Mrs. Rodormer claim not only their own respective shares, but also the share accruing to Walker E. Edwards, on the ground that they purchased his interest in his father's estate at a sale conducted by his trustee in bankruptcy in June, 1938. The interest of the Genesee Valley Trust Co. arises by virtue of their conveyance to it in February, 1947, of the interest in trust—for the benefit of the bankrupt and his minor children, as they assert in their brief, though the conveyance was not admitted in evidence.[1]

The circumstances of the sale in 1938 were these. The then trustee, one Aronson, petitioned the court for an order of sale of the bankrupt's right, title, and interest in his father's estate. The court directed a sale, and notice was sent to all creditors and published in the official papers. Sale was made in the office of the referee. The only bidder represented the attorneys for the Edwards Estate, and he bid $75. The following day the trustee presented his verified petition and report setting forth the purchasers as Dorothy E. Slocum and Mary E. Rodormer and seeking confirmation of the sale. The referee granted an order confirming the sale and directing the trustee to make the conveyance to the named purchasers. The trustee executed a bill of sale to the two sisters on June 15, 1938, which was immediately filed in the Onondaga County Clerk's office. In September, 1938, he filed his final account and was discharged, no dividend having been paid to creditors.

The death of the brother having disclosed the value to what had formerly been a fairly remote contingent interest in remainder, proceedings were taken which culminated in the order here under attack. As early as October, 1946, the bankrupt and his original

---

[1] They further assert that these minor children should be represented in those proceedings; but such subsequent interests—arising by voluntary assignment made after the parties were already at issue—are, of course, adequately represented by the assignors, as original takers of the property in question, as well as by the trustee.

trustee petitioned the district court for the reformation and correction of the bill of sale and the order of confirmation. The first definite action of the district court appears to have occurred April 25, 1947, when, on petition of one of the bankrupt's creditors, it reopened the bankrupt estate and referred it to Referee Wiles for further administration. On May 3, 1947, the referee ordered the present appellees to show cause why the contingent interest of the bankrupt in his father's estate should not be declared an unadministered asset. This order having been duly served, the appellees attempted without success to induce the district court to vacate its earlier order and all proceedings under it or to stay them pending appeal. They were equally unsuccessful in their attempt to secure a stay from this court.[2] Referee Wiles then proceeded to hold hearings on the trustee's petition and that of the bankrupt for correction of the order of confirmation of the sale. Appellees appeared by attorney who filed a written notice of special appearance for the purpose of objecting to the jurisdiction of the court, wherein they stated that their participation, if any, in the hearing should not be deemed a waiver of their objections. They were actually present at the proceedings, but offered no testimony, though their counsel objected to questions propounded to petitioners' witnesses, cross-examined them, and offered exhibits. On June 30, 1947, the referee entered his order setting aside the sale and the confirmation thereof and supported it by a detailed memorandum and opinion.

One of the witnesses at the hearing was Mr. Sovik, attorney for the Edwards estate at the time of the sale, who testified that the bidder had acted upon his instructions, and that he was not representing the persons whose names he caused to be inserted in the bill of sale. The witness explained that the purchase had been made in order that the provisions of the will might be carried out as originally intended, and for lack of a better arrangement he had the names of the sisters put in as purchasers. He further testified that they had never paid anything in the matter and, indeed, were unaware of the use of their names in connection with the sale until some time in 1944. Further, it was made clear from the testimony of various witnesses that the subject matter of the sale was believed to be the right of the trustee to garnishee the bankrupt's income from the trust fund. All the witnesses agreed that the contingent interest under the will, whereby the bankrupt might inherit outright a portion of the estate upon the death of his brother, was not in the minds of the parties. In fact, Referee Wiles explicitly states in his opinion that this certainly was not in his mind, or called to his attention, at the time of his order of confirmation of the sale. Accordingly he found that there was no intention to sell such contingent interest, and that the order was entered in consequence of a mutual mistake. He further found that none of the parties would be prejudiced by vacating the bill of sale and the proceedings upon which it issued. Thereupon he ordered the bill of sale vacated and set aside, and the interest of the bankrupt in the principal of the estate of Daniel M. Edwards declared an unadministered asset now vested in the present trustee of the bankrupt.

The district court, in vacating the referee's order for lack of jurisdiction, placed its decision upon two grounds, viz., (1) lack of present jurisdiction over the parties, and (2) that if any remedy existed, it was by plenary suit in an appropriate court, and not by summary proceedings. It stated that the bankrupt and two of the appellees were not residents of the Northern District. The record does not show the present residence of the bankrupt;[3] but under our ruling in Gerber v. Fruchter, 2 Cir., 147 F.2d 120, the court would have retained jurisdic-

---

[2] In vacating a temporary stay of proceedings before Referee Wiles, this court ordered that the referee make no determination as to the validity or effect of a certain instrument dated May 4, 1937, then presently the subject of litigation before the Surrogate of Onondaga County, New York. This refers to a claimed release given by the bankrupt to his father's estate a year before his bankruptcy; though obviously of potentially great importance to the settlement of this largely family dispute, its validity and effect must be tested in the state courts.

[3] Testimony of Mrs. Walker E. Edwards at the hearing indicated that they removed from Syracuse, apparently to Stamford, Connecticut, in April, 1946.

tion as against him, even had he been contesting, rather than supporting, the jurisdiction, and appellees' do not press this point. As to the appellees, Mrs. Rodormer lives at Syracuse, in the Northern District, while Mrs. Slocum and the Genesee Valley Trust Co. are residents of Rochester, in the Western District. All parties agree that the appellees were personally served in the districts of their respective residences. In addition to these jurisdictional issues, the appellees also attack for lack of basis "in fact or in law" the grounds taken by the referee for setting aside the sale and its confirming and assert laches upon the part of appellants in seeking the relief.

■ We are confronted at the outset with the problem of the bankruptcy court's power—after the estate has been reopened —to set aside an order earlier made. Here there is no question as to whether the estate had been properly reopened. Indeed there could be none. Bankruptcy Act, § 2, sub. a(8), 11 U.S.C.A. § 11, sub. a(8); In re Schreiber, 2 Cir., 23 F.2d 428, certiorari denied Schreiber v. Public Nat. Bank & Trust Co. of New York, 277 U.S. 593, 48 S. Ct. 529, 72 L.Ed. 1005; In re Leigh, 7 Cir., 272 F. 678, certiorari denied sub nom. Chicago Ry. Equipment Co. v. Laughlin, 256 U. S. 698, 41 S.Ct. 537, 65 L.Ed. 1177; Grand Union Equipment Co. v. Lippner, 2 Cir., 167 F.2d 958. The question then concerns the situation where an order as entered did not express the sale intended by the parties. It is fairly obvious that if the subject matter sold were what the literal language of the bill of sale implied, then the interest would not have passed for a mere $75, nor would the referee have confirmed it at such an inadequate figure. The facts as found by the referee clearly call for the setting aside of the sale in question. The authorities support such a course. In re Pottasch Bros. Co., 2 Cir., 79 F.2d 613, 101 A.L.R. 1182; In re Jewett & Sowers Oil Co., 7 Cir., 86 F.2d 497; In re Burr Manufacturing & Supply Co., 2 Cir., 217 F. 16, 21; Gerber v. Fruchter, supra; In re Brenner, D.C.M.D.Pa., 190 F. 209. See also In re Crosby Stores, 2 Cir., 65 F.2d 360; Wragg v. Federal Land Bank of New Orleans, 317 U.S. 325, 63 S.Ct. 273, 87 L.Ed. 300; Chappel v. First Trust Co. of Appleton, Wis., D.C.E.D.Wis., 30 F.Supp. 765;

In re Rainey, D.C.Md., 31 F.2d 197; In re Macklem, D.C.Md., 28 F.2d 417; In re Traymore Shoe Shops, D.C.S.D.N.Y., 300 F. 245.

In the Pottasch case, supra, an order was modified so as to conform to the prayer of the petition upon which it was based. Here the district court was of the opinion that the bankruptcy court had no authority to vacate an order express and correct in its terms. But that too narrowly restricts the Pottasch holding. In that case, as in this, the order at issue had a verbal validity. Its language was neither ambiguous nor contradictory. Yet it was modified so as to conform to the intention of the parties. True, the order as there modified conformed to the petition upon which it was based. Since the question is one as to the court's power, that point is not so decisive as the fact that a mistake had been made and the order was not a correct expression of the parties' intentions. The petition upon which the order was based was but one fact establishing this situation. The same result should follow where other evidence as convincingly establishes the error. Such is the holding in In re Jewett & Sowers Oil Co., supra. There the trustee in bankruptcy sold for $300 all the right, title, and interest of the bankrupt under a certain commission contract. It subsequently appeared that at the time of the sale there was already due to the bankrupt under that contract the sum of $5,600 in commissions, payable by a firm of unquestioned solvency. Accordingly the sale was set aside. The court pointed out that the parties had not intended to make such a sale. It further emphasized that there was a disproportion between the sale price and the value of the subject matter of the sale that shocked the conscience. Equity would not permit it. And this court in In re Burr Manufacturing & Supply Co., supra, recognized that inadequacy of price so great as to shock the conscience of the court was ground for vacating a sale already confirmed. See also 4 Collier on Bankruptcy, 14th Ed. 1942, 1579–1587. So, too, in the present case, the difference between the price of $75 and the value of the interest as it now develops is such as to shock the conscience; and in addition are the facts that the parties, as found by the court upon clear evidence, were acting as a result of mutual mistake.

■ We are brought then to the attacks upon the referee's jurisdiction to enter the order. The word "summary," as applied to the jurisdiction of the district court, although seemingly portentous, may actually mean little if it has reference only to different methods of entrance to the same court and there are lacking questions as to form of trial, imprisonment for contempt, or others which have caused some doubt as to turnover orders for property in certain cases. Cf. Cline v. Kaplan, 323 U. S. 97, 65 S.Ct. 155, 89 L.Ed. 97; Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401. Here seemingly at most involved are questions of venue or of separate actions against the appellees in different districts—questions, however, which are set at rest by the provisions for service of process throughout the state discussed below. Actually, however, the problem is not aptly presented under the labels of "summary" versus "plenary" jurisdiction; it is rather that of direct correction of, as opposed to collateral attack upon, bankruptcy orders. As pointed out by Professor Moore, 4 Collier on Bankruptcy, 14th Ed. 1942, 1587, 1588, "The validity of the sale is not open to inquiry or impeachment in any collateral proceeding in either a state or federal court," and further, "Collateral attack must be distinguished from a petition or motion to set aside a sale, filed in the bankruptcy proceedings." On the findings below there is no ground of action against individuals; thus there is no showing of fraud, but only of mutual mistake. Hence the direct correction of the order of confirmation is both the proper and the only appropriate remedy. So, in Governor Clinton Co. v. Knott, 2 Cir., 120 F.2d 149, appeal dismissed Knott v. Governor Clinton Co., 314 U.S. 701, 62 S.Ct. 50, 86 L.Ed. 561, we held that the court could summarily set aside an order the product of fraud, stating at page 152 of 120 F.2d that it had "summary jurisdiction to protect itself and the interests of the persons and property within its custody." Such jurisdiction, as we have seen, is upheld in In re Pottasch Bros. Co., supra; In re Jewett & Sowers Oil Co., supra; In re Burr Mfg. & Supply Co., supra; and see also Burnham v. Todd, 5 Cir., 139 F.2d 338, and Mitchell v. Mitchell, 1 Cir., 59 F. 2d 62. Hence cases such as those cited by appellees of Hinds v. Moore, 6 Cir., 134 F. 221, and In re Charles Knosher & Co., 9 Cir., 197 F. 136, where either property or its value was sought from persons voluntarily accorded possession of it, are not in point. Here the focal point of attack is not the possession of property, but the correction of the court's own decree.

■ This conclusion also is an answer to the claims based on lack of due service of process upon the appellees resident in the Western District. The original court is the only one having jurisdiction to pass directly upon its own decrees and to correct them as may be legally required. Hence, as we pointed out in Gerber v. Fruchter, supra, the various parties are entitled to no further notice than is to be given generally to adversaries in bankruptcy proceedings. Here, of course, there was due and full notice to the appellees, and in fact the proceedings were delayed while they unsuccessfully sought dismissal and the various stays depicted above. Moreover, the service of process was entirely adequate as personal service in the light of Rule 4(f), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c—sustained in Mississippi Pub. Corporation v. Murphree, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185—which provides for service throughout the state. We see no reason why this rule should not be applicable in bankruptcy, as stated in 1 Collier on Bankruptcy, 14th Ed. 1940, 168, 169, id. 1946 Cum.Supp. 31, 32, and 89 U. of Pa.L.Rev. 960, 962. The objection made by appellees that the Bankruptcy Act, § 2, sub. a, 11 U.S.C.A. § 11, sub. a, vests only courts of bankruptcy with jurisdiction "within their respective territorial limits" is obviously not inconsistent, for, as we have just noted, this is a ju 'iction which is to be exercised within, and only within, the territorial limits of this particular bankruptcy court. Any other view would prove far too much and would imply that district courts, in their diversity or other jurisdiction, had power limited as to their every action to those parties who resided within the district limits. It may be noted, too, that the action of the appellees in voluntarily moving to vacate the reopening order was itself a submission to the jurisdiction of the bankruptcy court. In re Read-York, Inc., 7 Cir., 152 F.2d 313.

632·

There is no merit in the claim of laches. The testimony at the hearing showed that the bankrupt and his wife lived with "Mother Edwards" until after her death and their eviction in April, 1946, which is also the time of the death of the brother, when the windfall claimed by the sisters first became apparent. Proceedings were begun as early as the next October and were well under way by the next spring. We do not see any unusual delay here, certainly as against volunteers who had paid no consideration of any kind and whose attempts themselves to transfer the interest occurred· after the issues were drawn.

The appellees ask that in the event of our decision against them on the issue of jurisdiction the case should be remanded to the district court for a further hearing and trial on the merits. We see no occasion for this. The parties were offered the opportunity for a full hearing, and adequate and complete evidence was produced before the referee which sustained his findings. Since there was little, if any, question about the basic facts, it is doubtful whether the appellees prejudiced themselves by not formally participating in the giving of evidence on the merits. But in any event they freely made their choice with full knowledge of all the circumstances, and they must now accept the consequences.

The decree of the district court vacating the referee's order is therefore reversed, and the referee's order is reinstated and affirmed.