### In re BURR MFG. & SUPPLY CO.

### In re PORTER.

#### (Circuit Court of Appeals, Second Circuit. August 31, 1914.)

#### Nos. 279, 280.

1. BANKRUPTCY (§ 36*) — PROCEDURE — POWER OF COURT TO VACATE ORDER AFTER TERM.

The general rule that a court has no power to set aside or modify its judgments or decrees after the term at which the same were entered does not apply to orders and decrees in a bankruptcy proceeding as to which there are no separate terms.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 36; Dec. Dig. § 36.*]

2. JUDICIAL SALES (§ 31*)—EFFECT OF CONFIRMATION.

While confirmation of a sale made under an order of court does not pass the legal title, it vests the full equitable title to the property in the purchaser.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. §§ 59–67; Dec. Dig. § 31.*]

3. JUDICIAL SALES (§ 35*)—VACATION—GROUNDS.

A judicial sale may be vacated for cause, even after confirmation; but public policy requires that there should be stability in such sales, and a sale should not be set aside, except for reasons for which equity should set aside a sale between individuals.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. §§ 72, 73; Dec. Dig. § 35.*]

4. JUDICIAL SALES (§ 42*)—PERSONS WHO MAY QUESTION VALIDITY.

One must be a party who is interested and injuriously affected by a judicial sale, to entitle him to apply to have it vacated.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. §§ 80, 81; Dec. Dig. § 42.*]

5. BANKRUPTCY (§ 311*)—SECURED DEBTS—WAIVER OF SECURITY.

A secured creditor of a bankrupt, who proves his debt as unsecured, waives his security.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 497–500; Dec. Dig. § 311.*]

6. JUDICIAL SALES (§ 31*)—IRREGULARITIES IN PROCEEDINGS—PERSONS WHO MAY QUESTION VALIDITY—LACHES.

Defects of form or irregularities in an order of sale or notice are cured by confirmation, and even in case of serious irregularities a party who, with knowledge of the same, fails to object before confirmation, loses his right by his laches, and cannot thereafter ask a vacation of the sale on that ground.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. §§ 59–67; Dec. Dig. § 31.*]

———

**7. Judicial Sales (§ 39\*)—Vacation—Inadequacy of Price.**

Inadequacy of price alone is not sufficient ground for setting aside a sale after confirmation, unless the inadequacy is so great as to raise a presumption of fraud or to shock the conscience of the court.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. § 77; Dec. Dig. § 39.\*]

**8. Bankruptcy (§ 269\*)—Sale of Realty by Trustee—Grounds for Vacation.**

The difference between $6,250, for which property was first sold by a trustee in bankruptcy, and $8,500, which it brought on a resale, *held* not to show such a gross inadequacy of price as to justify the vacation of the confirmation and the setting aside of the first sale.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 370; Dec. Dig. § 269.\*]

Petitions to Revise Orders of the District Court of the United States for the Eastern District of New York.

Petitions to review and revise an order of the United States District Court for the Eastern District of New York setting aside a previous order confirming a sale, and also to review and revise an order confirming a resale held pursuant to the before mentioned order, and to vacate and set aside the order confirming the resale. Both petitions were consolidated and heard on a single record by order of this court.

For opinion below, see 209 Fed. 138.

The bankrupt corporation owned an equity in certain real estate situate at Nos. 96–98 Lexington avenue, borough of Brooklyn, city of New York. This real estate was incumbered by three mortgages as follows: A first mortgage of $4,250, held by the Bond & Mortgage Guaranty Company; a second mortgage of $2,000, held by Louisa P. Boaz; a third mortgage, held by William J. Myers, as trustee. The second mortgagee, whose mortgage was open, began foreclosure proceedings immediately after the petition in bankruptcy was filed. The trustee in bankruptcy made application to sell the property, and thereupon the referee, without notice to any mortgagee, made an order of sale free and clear of all liens. No mortgagee had notice of the sale and no mortgagee was present at the sale. There is no contention that due notice of sale was not sent to and received by the general creditors.

The property was put up for sale on August 5, 1913. The petitioner, Porter, bid $5,000, and his bid was the sole bid. The bid was then and there rejected by the trustee. The petitioner asserted that there was no authority to reject the bid, and demanded a deed, which was refused. The petitioner, Porter, thereupon moved the court, upon notice only to the trustee, for confirmation of the sale. The trustee and the attorney for the second mortgagee, who appeared voluntarily, protested against confirmation. The court adjourned the hearing, upon the motion to confirm, for two weeks. When the matter again came before the court, the petitioner, Porter, announced his readiness to pay $6,250, instead of $5,000, by buying up the second mortgage. The trustee objected to such private sale, and at the same time produced a Mr. Koehler in person, and stated he was willing to pay $7,500 for the property, and deposited with the court a certified check of 10 per cent. of this amount. The court, however, signed an order allowing the petitioner, Porter, to get the property for $6,250, the amount of the first and second mortgages.

The third mortgagee then came into court and asked for a resale and that the alleged confirmation of the sale to the petitioner, Porter, be vacated. The third mortgagee being a trustee for several beneficiaries, one of the beneficiaries also appeared and asked the same relief, and the trustee of the bankrupt likewise asked the same relief. The court set the alleged sale aside, vacated the alleged confirmation, and directed a new sale. At the resale one Herman Schomaker bid $8,500 for the property, and his bid was accepted, and

---

\*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the sale to him confirmed. The deed transferring the property to Schomaker was delivered to him in January, 1914.

The case now comes up on the petitions of Porter to review and revise the orders made.

Franklin Taylor, of New York City (Joseph J. Zeiger, of Brooklyn, N. Y., of counsel), for petitioner.

Henry A. Blumenthal, of New York City, for trustee.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The question in this case is whether the action of the District Court vacating a sale of the property herein involved to the petitioner, Porter, and directing a new sale, shall stand. The sale made to Porter had been confirmed, only to be subsequently vacated. The purpose of a sale is that it shall be final, and the presumption is that a court, before confirming a sale made under its authority and in accordance with its directions, has observed due precaution to see that no wrong has been accomplished in and by the manner in which it was conducted. But it may sometimes happen that a court is imposed upon, or for some reason fails to perform its full duty in respect to such a sale, and when that happens a necessity may arise to vacate the sale, although it has been confirmed. We proceed to inquire whether the facts in this case justified the court below in its action, and whether Porter, the purchaser at the first sale, is or is not entitled to the benefit of his purchase.

[1] The confirmation order having been made at one term, and the order vacating it made at another term presided over by another judge, we are asked to hold that the court had no power to vacate its order, upon the theory that, after the expiration of the term in which an order, judgment, or decree is made, errors can be corrected only by an appellate court. In Bronsen v. Schulten, 104 U. S. 410, 415, 26 L. Ed. 797 (1881), Mr. Justice Miller, speaking for the court, said:

"It is a general rule of the law that all the judgments, decrees, or other orders of the courts, however conclusive in their character, are under the control of the court which pronounces them during the term at which they are rendered or entered of record, and they may then be set aside, vacated, modified, or annulled by that court. But it is a rule equally well established that after the term has ended all final judgments and decrees of the court pass beyond its control, unless steps be taken during that term, by motion or otherwise, to set aside, modify, or correct them; and if errors exist they can only be corrected by such proceeding by writ of error or appeal as may be allowed in a court which, by law, can review the decision."

It is, of course, true that as a general rule the power of the court to modify its orders expires with the term. But there are no terms in bankruptcy, and the principle which the learned counsel invokes that a court has no power to vacate its order other than at the term in which it was granted is inapplicable to the facts of this case. In Sandusky v. National Bank, 23 Wall. 289, 23 L. Ed. 155 (1874), Chief Justice Waite, speaking for the court, said:

"A proceeding in bankruptcy from the time of its commencement, by the filing of a petition to obtain the benefit of the act, until the final settlement of the estate of the bankrupt, is but one suit. The District Court, for all the purposes of its bankruptcy jurisdiction, is always open. It has no separate terms.

Its proceedings in any pending suit are, therefore, at all times open for re examination upon application therefor in an appropriate form. Any order made in the progress of the cause may be subsequently set aside and vacated upon proper showing made, provided rights have not become vested under it which will be disturbed by its vacation."

[2] The confirmation of the sale did not pass the legal title to Porter, but it had the effect of vesting in him the full equitable title to the property. Before confirmation a sale is not in a technical and legal sense a sale. Until confirmation an accepted bidder is merely a preferred proposer. But a confirmation has the effect of completing the sale, and while it does not pass the legal title it vests the full equitable title to the property in the purchaser, even though the deed executed in pursuance thereof is irregular, and even if no deed whatever is made. Stang v. Redden (C. C.) 28 Fed. 11; Henry v. McKerlie, 78 Mo. 416; 17 Am. & Eng. Encyc. Law, p. 993.

[3] After a sale has been confirmed, it may be vacated for cause. But public policy requires that there should be stability in judicial sales. The Ruby (D. C.) 38 Fed. 622; Duncanson v. Manson, 3 App. D. C. 250; Quigley v. Breckenridge, 180 Ill. 627, 54 N. E. 580; Virginia F. & M. Ins. Co. v. Cottrell, 85 Va. 857, 9 S. E. 132, 17 Am. St. Rep. 108. They are not to be disturbed for slight causes. Pewabic Min. Co. v. Mason, 145 U. S. 349, 12 Sup. Ct. 887, 36 L. Ed. 732. And courts are not to be astute in finding out objection to them. Cunningham v. Schley, 6 Gill (Md.) 207; Gibbs v. Cunningham, 1 Md. Ch. 44.

"The order of confirmation gives to the sale the judicial sanction of the court, and when made it relates back to the time of the sale, and cures all defects and irregularities, except those founded on want of jurisdiction or fraud. As the contract is then complete, the sale will not be set aside, except for the same reasons for which equity would set aside a sale between individuals; but relief will be given when such reasons do exist, as, for example, where there has been fraud or mutual mistake." 24 Cyc. 36, 37.

We discover in the facts herein involved no grounds upon which a sale between individuals could be set aside. The reasons given for setting the sale aside were: That the original order of sale was not correct in form; that the proof of notice of sale was indefinite, and, while it made a prima facie compliance with the law, yet the notices did not seem to have been received; that as the parties had appeared they should have been served personally or by attorney rather than by mail; that the order of confirmation was not on notice to the parties whose rights were cut off. The District Judge declared he was unwilling "to find an estoppel where there are so many conflicting equities and where the purchaser was told at the sale that his bid would not be accepted."

The reasons assigned are wholly insufficient to justify the court in the action taken.

[4] It cannot be important that the mortgagees received no notice of the sale, for no one of the mortgagees is in a position where he can be heard to attack the sale. Any party interested may apply to have a judicial sale vacated, unless by his acts or his laches he has become estopped. But he must be a party who is interested and injuriously affected by the sale. Dufour v. Leftwich, 33 La. Ann. 1471; Gilmer v. Nicholson, 21 La. Ann. 589; Presstman v. Mason, 68 Md. 78, 11 Atl.

764; Klapneck v. Keltz, 50 W. Va. 331, 40 S. E. 570. The mortgagees are without interest, because the order confirming the sale was upon condition that the purchaser, Porter, should "accept title subject to such, if any, liens as may be on the property." Moreover the first mortgagee had agreed to renew his mortgage with the purchaser for the full amount at an advance in the rate of interest. The second mortgage was paid under the agreement the amount bid being sufficient to pay the first and second mortgages. And the third mortgage had been surrendered or waived. The fact that the third mortgagee did not surrender his mortgage until after the sale is not important. The material fact is that his interest as a mortgagee did not exist at the time when the sale was vacated.

[5] The third mortgage was discharged by the mortgagee proving his claim against the bankrupt's estate. A secured creditor does not waive his security by proving his debt in the bankruptcy proceedings, if he proves it as a secured debt. But if he proves his debt as unsecured he waives the security. See Black on Bankruptcy, § 562. The third mortgagee proved his claim as an unsecured claim for the full amount, and expressly relinquished his security to the trustee in bankruptcy, stating in his proof of claim that the debt had been secured by the mortgage, "all of which is surrendered herein to the trustee." This surrender was made on August 29, 1913. It also appears that he had received a dividend.

[6] If the original order of sale was "not correct in form," if the proof of notice of sale was "indefinite," such irregularities and defects were cured by the order confirming the sale. Nevada Nickel Syndicate v. National Nickel Co. (C. C.) 103 Fed. 391; Watson v. Tromble, 33 Neb. 450, 50 N. W. 331, 29 Am. St. Rep. 492; Neligh v. Keene, 16 Neb. 407, 20 N. W. 277; Cargile v. Ragan, 65 Ala. 287; Mechanics' Savings, etc., Ass'n v. O'Connor, 29 Ohio St. 651. Even in the case of serious irregularities, a party loses his right to object by failing to make timely protest. If he has knowledge of the defects prior to confirmation, and makes no protest, he loses his right by his laches, and cannot come in afterwards with a request to have the proceeding vacated. 2 Freeman on Executions, § 340.

[7] It is said that Porter's bid was grossly inadequate and such as to shock the conscience, and that on this ground alone the court was justified in setting aside the sale. The court in its order did not assign the inadequacy of the amount Porter agreed to pay as a reason for its action, but it seems to have implied it, for its order was made conditional, and was only to become effective upon the agreement of the objecting parties "to bid or produce a bid of not less than $7,500 (they have offered to bid $8,500) and consent to have the balance over liens and expenses go into the estate generally." The condition which the court attached to its order makes it plain that it could not have attached any serious importance to the reasons it mentioned in the earlier part of its opinion for vacating the order confirming the sale. The court seems to have been under the impression that the fact that a larger sum would be realized on a resale was sufficient justification for setting aside the first sale, when taken into consideration with the other circumstances.

The form of the order shows that the court did not regard the other circumstances alone as sufficient to set aside the sale.

[8] The rule is that inadequacy of price, standing alone, is not sufficient ground for setting aside a sale, unless the inadequacy is so great as in itself to raise a presumption of fraud or to shock the conscience of the court. The difference between $6,250, for which the property was first sold, and $7,500, for which the court was willing to sell on the resale, and the difference between the amount of the first sale and the amount of $8,500, realized at the resale, does not show that gross inadequacy which warrants a resale. The cases which illustrate what is meant by inadequacy which shocks the conscience are cases where the difference in value was very much greater than the difference existing in this case. In Lankford v. Jackson, 21 Ala. 650, property worth $1,000 was sold for $6. In Daly v. Ely, 51 N. J. Eq. 104, 26 Atl. 263, property worth $2,500 was sold for $50. In Hardin v. Smith, 49 Tex. 420, property worth from $2 to $5 an acre was sold for 28 cents per acre. And perhaps a sale for a half, or a third of actual value may be within the rule. Sinnett v. Cralle, 4 W. Va. 600. But such a difference in value as is shown in the case at bar cannot be regarded as coming within the rule, even when taken in connection with the circumstances already noted. The circumstances relied upon raise no presumption of fraud or unfairness.

Before confirmation, if the inadequacy of the price be great, slight circumstances of unfairness on the part of the party benefited will be sufficient to prevent confirmation, and will justify the opening of the sale for further bids. In Ballentyne v. Smith, 205 U. S. 285, 27 Sup. Ct. 527, 51 L. Ed. 803 (1905), this course was allowed, the property being worth at least seven times more than the sum bid. But the case is different after the sale has been confirmed, and the court below seems to have lost sight of this distinction. After a sale has been confirmed, the court and the successful bidder are regarded as occupying the relation of vendor and purchaser in an executed sale, and nothing is sufficient to avoid it which would not set aside a sale of like character between private parties. In Morrison v. Burnette, 154 Fed. 617, 624, 83 C. C. A. 391, 398 (1907) the Circuit Court of Appeals in the Eighth Circuit declared that:

"The rule is settled, and it seems to be universally approved, that after confirmation of a judicial sale neither inadequacy of price, nor offers of better prices, nor anything but fraud, accident, mistake, or some other cause for which equity would avoid a like sale between private parties, will warrant a court in avoiding the confirmation of the sale, or in opening the latter and receiving subsequent bids."

The court considered the rule so firmly established as to be no longer debatable, and in that view of the matter we concur. The cases are there collected, and need not be repeated here. And in view of the established principles there can be no doubt that the court below has committed a serious error in vacating the order confirming the sale made to the petitioner.

The order which set aside and avoided the sale to the petitioner, and all proceedings based thereon, and which directed a new sale of the property, and the order confirming the resale, are hereby reversed.

The case is remanded to the trial court, with directions to reinstate the order of sale to the petitioner and the order confirming the sale, and to take further proceedings not inconsistent with the views expressed in this opinion.

It is so ordered.