JACOBSOHN v. LARKEY. GOLD v. SAME. In re AMERICAN BEAVER CO..

(Circuit Court of Appeals, Third Circuit. October 26, 1917.)

Nos. 2271, 2313.

1. BANKRUPTCY &—264—SALE OF PROPERTY—RIGHT TO OPPOSE CONFIRMATION.
   The unsuccessful bidder at a sale of a bankrupt's real and personal property had no standing to oppose confirmation of the sale on the ground that he would have bid more than the highest bidders if the property had been sold as a whole, instead of separately, where the sale was made in conformity with the order therefor.

2. BANKRUPTCY &—264—SALE OF PROPERTY—RIGHT TO URGE CONFIRMATION.
   The high bidders on a public sale of a bankrupt's property have a standing to appear and urge the acceptance of their bids and the confirmation of the sale, especially as public policy requires 'stability in judicial sales in order to induce bidding at such sales.

3. BANKRUPTCY &—269—SALE OF PROPERTY—GROUNDS FOR SETTING ASIDE.
   A mere offer to pay more than the price bid is not a sufficient ground for setting aside a public sale of a bankrupt's property, especially as it would tend to discourage and prevent bidding to deprive the highest bidder of the advantage of his accepted bid because of a subsequent offer of another person to bid higher on a resale.

&—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

**4.** BANKRUPTCY ☾⇒269—SALE OF PROPERTY—GROUNDS FOR SETTING ASIDE.

Mere inadequacy of price is not a sufficient ground for setting aside a public sale of a bankrupt's property; but when the inadequacy is so great as in itself to raise a presumption of fraud, or to shock the conscience of the court, it becomes gross inadequacy and is a sufficient ground.

**5.** BANKRUPTCY ☾⇒264—SALE OF PROPERTY—CONFIRMATION—DISCRETION.

Under Bankruptcy Act July 1, 1898, c. 541, § 70b, 30 Stat. 565 (Comp. St. 1916, § 9654), requiring the real and personal property of bankrupt estates to be appraised, and providing that property shall not be sold, otherwise than subject to the approval of the court, for less than 75 per cent. of its appraised value, whether the price bid on a public sale is grossly inadequate, and whether confirmation should be refused on that ground, are matters within the judgment and discretion of the tribunal ordering the sale.

**6.** BANKRUPTCY ☾⇒446—REVIEW OF PROCEEDINGS—DISCRETION OF COURT.

An appellate tribunal will not reverse the discretion of the bankruptcy court in approving or setting aside a public sale of a bankrupt's property, under Bankruptcy Act, § 70b, by substituting its own discretion; nor will it disturb or interfere with the exercise of such discretion, so long as it does not amount to an abuse of discretion.

**7.** BANKRUPTCY ☾⇒269—SALE OF PROPERTY—SETTING ASIDE—DISCRETION.

While the bankruptcy court would have exercised a discretion of doubtful validity in setting aside a sale of a bankrupt's real and personal property for $19,900 and $7,600, respectively, because an unsuccessful bidder offered to bid $1,500 more on a resale of the property as a whole, there was no improvident exercise of its discretion in setting aside the sale for gross inadequacy of price, where the personal property was appraised at $31,212.20 and the real property at $34,350, providing the appraisement was evidence upon which the court might properly base its discretion.

**8.** BANKRUPTCY ☾⇒269—SALE OF PROPERTY—SETTING ASIDE—DISCRETION.

Under Bankruptcy Act, § 70b, requiring the real and personal property of bankrupt estates to be appraised, and providing that it shall not be sold otherwise than subject to approval of the court for less than 75 per cent. of the appraised value, the appraisement was evidence upon which the court might act in setting aside a sale for gross inadequacy of price.

**9.** BANKRUPTCY ☾⇒269—SALE OF PROPERTY—SETTING ASIDE—CONDITIONS ON RESALE.

Where the bankruptcy court set aside a public sale of a bankrupt's property for gross inadequacy of price, and not because an unsuccessful bidder offered to bid more on a resale, there was nothing improper in conditioning its order for a resale on the giving of bonds by the objectors to insure a better bid on the resale.

Petition for Revision of Proceedings of the District Court of the United States for the District of New Jersey; J. Warren Davis, Judge.

In the matter of the American Beaver Company, bankrupt; Barney Larkey, trustee. An order of the referee, refusing confirmation of sales of the real and personal property of the bankrupt, was affirmed by the District Court (242 Fed. 599), and Lazar Jacobsohn and Herman Gold separately petition for review of the order so far as it affects the real and personal property, respectively. Affirmed.

Cecil H. MacMahon, of Newark, N. J., for petitioners.

Nathan Bilder, of Newark, N. J., for defendant.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. The matter here involved was brought before the District Court on petition to review an order of a referee refusing confirmation of a sale in bankruptcy on the ground of gross inadequacy of price. The court affirmed the order. Its decision is now before us for review and revision. Bankruptcy Act, § 24b (Comp. St. 1916, § 9608).

Pursuant to an order of the referee, the trustee offered at public sale, subject to confirmation, the property of the bankrupt, consisting of real estate, machinery, equipment and merchandise theretofore used in the bankrupt's business of hat manufacturer. The real estate was encumbered by a first mortgage for $9,000 and by a second mortgage for $58,000 given to secure an issue of bonds. The latter mortgage purported to be a lien also upon the personal estate. Conceiving that the liens upon the two classes of property required that the property be sold separately in order to avoid confusion in the application of proceeds (the property being offered free of liens) the trustee declined to sell the property in bulk as a going concern, but sold it in separate parcels on different days.

The trustee reported that Lazar Jacobsohn had bid $19,900 for the realty and Herman Gold $7,600 for the personalty; that these were the highest bids; and recommended the confirmation of the sale.

Confirmation was opposed by Louis Kamm, an unsuccessful bidder, and by sundry unsecured creditors. Kamm's complaint was that he was forced to bid low because the property was offered in two parcels, realty and personalty; that he had no use for one without the other; that had the property been offered in bulk as a going concern he would have bid and was still ready to bid a sum larger than the aggregate of the highest bids received. The creditors' objection to confirmation was that the property was sold for a grossly inadequate price.

Upon the question of inadequacy of price no evidence was produced. The creditors cited the appraisement, and the referee, relying upon it as evidence of value, was manifestly influenced in his conclusion by the great disparity between the valuations there made and the prices bid. The personal property was appraised at $31,212.20 and was sold for $7,600; the real property was appraised at $34,350 and was sold for $19,900.

Notwithstanding this disparity, the referee was not inclined to let go the bids at the first sale without first making sure of equally good bids at a second. To meet this situation the objecting bidder proposed giving a bond to insure that at a second sale the property would bring $2,500 more than the amount brought at the first, and the objecting creditors similarly offered a bond that the amount obtained at the second sale would be at least $1,500 more than that obtained at the first, provided that the property, after being offered in parcels, be offered as a whole. These tenders were accepted by the referee, the sale set aside (conditioned upon filing the bonds) and another sale ordered. On review the District Court affirmed the order of the referee. This action of the court is the matter before us for revision.

The principal question, of course, is whether the trial court exer-

cised a proper discretion in affirming the order setting aside the sale. But in this question are involved separate and conflicting rights of perhaps three classes of persons, (1) the low bidder, (2) the high bidders, and (3) creditors.

[1] We may lay aside any claim of right made by the low bidder to have the sale set aside in order to give him another chance to bid. There was no irregularity in the sale. He simply complains that he would have bid higher if the property had been offered in a different way. The trustee offered the property in conformity with the order of sale, and as there is nothing to show either in the order of sale or in the manner in which the trustee executed it that the low bidder was injuriously affected, he is without right to oppose confirmation. In re Burr, 217 Fed. 16, 19, 133 C. C. A. 126.

[2] The high bidders, however, have a standing which permits them to appear and urge the acceptance of their bids and the confirmation of the sale. They were brought to the sale by invitation of the court, and having done what the court asked them to do, they now have a right to ask the court to approve their acts.

Their right to be heard is based upon still another consideration. Judicial sales are an indispensable part of the machinery employed in administering bankrupt estates. Public policy requires stability in such sales. The Ruby (D. C.) 38 Fed. 622; In re Burr, 217 Fed. 16, 19, 133 C. C. A. 126. To induce bidding at such sales and reliance upon them, the purpose of the law is that they shall be final, Tewabic Mining Co. v. Mason, 145 U. S. 349, 356, 12 Sup. Ct. 887, 36 L. Ed. 732; they are not to be disturbed except for substantial reasons.

[3] After much experience in scrutinizing bidding at judicial sales, courts now uniformly hold that the mere offer to pay more than the price bid is not a substantial ground for setting aside a sale, recognizing that nothing will more certainly tend to discourage and prevent bidding than a judicial determination that the highest bidder may be deprived of the advantage of his accepted bid by an offer of another person, subsequently made, to bid higher on resale. Morrisse v. Inglis, 46 N. J. Eq. 306, 19 Atl. 16; In re Metallic Specialty Mfg. Co. (D. C.) 193 Fed. 300; In re Shapiro (D. C.) 154 Fed. 673.

While such are the rights of successful bidders and while the policy of the law favors them as against lower bidders who attempt to overthrow them, their rights, however, are not superior to the right of creditors not to be deprived of their security at prices which are grossly inadequate. Therefore the issue in this case is not between the low and the high bidders but is between the high bidders and creditors—parties with equal standing—and the issue is not whether the court exercised a valid discretion in ordering a second sale on a tender of a higher bid, but is whether it abused its discretion in setting aside the first sale on the ground that the bids were grossly inadequate.

[4] The rule is that mere inadequacy of price is not a sufficient ground for setting aside a judicial sale; but when the inadequacy is so great as in itself to raise a presumption of fraud or to shock the conscience of the court, it becomes gross inadequacy, and is a sufficient

ground. In re Burr, 217 Fed. 16, 21, 133 C. C. A. 126; Cowen v. Stevens, 3 Har. (Del.) 494; Oldham v. Hossenger, 5 Houst. (Del.) 34; Broomall v. Reybold, 5 Houst. (Del.) 435; Roger v. Ocheltree, 4 Houst. (Del.) 452.

[5-7] When in a given case a price is grossly inadequate and when upon that ground confirmation should be refused, are matters within the judgment and discretion of the tribunal ordering the sale. When a trial tribunal orders a judicial sale subject to its confirmation under authority expressly requiring of it the exercise of discretion in approving or setting aside the sale (Bankruptcy Act, § 70b), an appellate tribunal will not reverse its discretion by substituting its own nor will it otherwise disturb or interfere with its exercise so long as it does not amount to an abuse of discretion. In re Shea, 126 Fed. 153, 61 C. C. A. 219. In the exercise of this discretion the trial court in this case found that the prices bid were grossly inadequate. It based its judgment, as we read the record, not on the difference between the bids made at the first sale and the bid offered to be made at a second, but upon the disparity between the prices bid and the property valuations made by the appraisement. Had the court refused confirmation of the sale upon a finding of an inadequate price, based upon the difference between the bids made and the bid proposed, it would have exercised a discretion of doubtful validity. Morrisse v. Inglis, supra; In re Metallic Specialty Mfg. Co., supra; In re Shapiro, supra. But having found gross inadequacy of price in the disparity between the bid and the appraisement, we cannot say that the discretion of the court was improvidently exercised—if based upon evidence. As nothing was before the court showing the value of the property except the appraisement, the remaining question is, whether the appraisement is evidence upon which the court may base a valid discretion.

[8] An appraisal in bankruptcy is an estimate of the value of the bankrupt estate made by three disinterested persons. The appraisers are officers of the court and are selected with an especial regard to their fitness to give an opinion upon the value of the particular property comprising the estate. In the case under consideration the kind of property appraised was a hat manufactory and merchandise. Two of the appraisers were men of long experience and high standing in that business. The appraisal, therefore, is the value data upon which the court subsequently acts in disposing of the bankrupt's property. To obtain such data the statute provides (section 70b) that "all real and personal property belonging to bankrupt estates shall be appraised." Certainly this means that the property shall be appraised before it is sold, and as it is provided in the same section that property "shall not be sold otherwise than subject to the approval of the court for less than seventy-five per centum of its appraised value," the statute connects the appraisal with the sale and plainly intends that the value of the property as appraised shall have a bearing upon and a relation to the price at which the court, in the exercise of its discretion, shall confirm or set aside the sale.

The sale in this case was made subject to confirmation, as shown by the terms of the order, and was conducted under authority of the

provision which requires confirmation by the court when the property is sold for less than seventy-five per centum of its appraised value. As the provision conferring upon the court authority to confirm the sale declares that that authority shall be exercised when the price bid has a given relation to the value appraised, it is clear to us that the statute intends that the appraisement shall be employed by the court as a guide in the exercise of its discretion. When the purchase price approaches the appraised value it leads the judgment of the court in one direction; when the disparity between the purchase price and the appraised value is so great as to suggest fraud or to shock the conscience of the court, then it directs the court's judgment in another direction. The appraisal thus becomes evidence of value. It is not conclusive evidence, to be sure, nor does it speak absolute verity, but it is provided for the court's use and the court may rely upon it alone or may rely upon it partially, or may look beyond it to other evidence in ascertaining the real value, as in an exceptional instance where a sale was set aside on a bid equal to the appraisal and a second sale ordered on proof that the property was worth and would bring three times the appraised value. In re Shea, 126 Fed. 153, 61 C. C. A. 219.

We are of opinion that the appraisement is evidence upon which the court may base a valid discretion when called upon to confirm or set aside a trustee's sale.

[9] It is further contended in this case that the care exercised by the court to secure as good a bid at the second sale as was obtained at the first shows that the court's discretion was swayed, if not determined, not by the disparity between the bid obtained and the appraised value, but by the small difference between the bids made at the first sale and the bid offered to be made at a second. We are not of this view. Inadequacy of the price bid at the first sale, and the terms under which the first sale was set aside and a second sale ordered are matters separate and distinct. Having found gross inadequacy of the price bid at the first sale, the court might validly set aside that sale on that ground and at the same time make an order for a second sale conditioned upon terms that would secure to the estate whatever advantage it derived from the bids at the first sale. These terms are considerations which have to do with a new sale ordered and have no relation to the discretion exercised in setting aside the first sale.

The decree below is affirmed.