**In re WINTHROP MILLS.**
No. 23714 Inv.

United States District Court
D. Maine, S. D.
Dec. 8, 1952.

**324**

Allen L. Goldfine, pro se.

Wilfred A. Hay, Portland, Me., and Thomas E. Delahanty, of Lewiston, Me., for trustee.

The following is the opinion of POMEROY, Referee in Bankruptcy:

Under date of September 2, 1952, this Court, acting upon the petition of the trustee, ordered sale of the assets of the bankrupt at public auction, free and clear of all liens and encumbrances. The record reveals notice was given to all alleged lienors and notice was given to all creditors in compliance with the provisions of Section 58, sub. a (4) of the Act, 11 U.S.C.A. 94 sub. a (4). Paragraph 4 of that order reads as follows:

"At the time of the sale the auctioneer shall obtain bids for the property of the bankrupt estate in bulk, and shall thereafter obtain bids for each specific item of property included in the bankrupt's estate, and shall make a true and accurate record of the amount of such bid. Provided, nevertheless, that such action shall not prevent the auctioneer from selling the property of the bankrupt's estate in bulk, if sale in such manner is determined by the trustee at the time of the sale to be in the best interests of said estate, but in any event bids shall first be sought in bulk and a record made of the bids so received before the bids are sought on each individual item."

The record shows the sale was conducted and in compliance with the provisions of the order above quoted, the auctioneer did offer the property first in bulk and thereafter by lots.

When the entire estate was offered in bulk the highest bid received was $375,000. Thereafter the auctioneer offered a mill and the machinery therein as one lot and various parcels of real estate as other separate lots. The highest bid received for the mill and its contents was $475,000. The total of this bid and the bids received for the lots of real property other than the mill was approximately $492,000. Thereafter, the assets of the estate were offered in lots and the aggregate amount of such bids as reported by the auctioneer was $511,536.01. The trustee seeks confirmation of the bids in lots. Samuel Krintzman, who has bid $475,000. for the mill and its contents in bulk, seeks, by petition, confirmation of the bulk bids. His petition is accompanied by an offer to increase his bid from $475,000. to an amount which, when coupled with the highest bids received for the other pieces of property, will equal the amount bid by those bidders on lots.

Allen L. Goldfine, an alleged creditor, opposes confirmation of any of the bids on the grounds, (a) that the price is inadequate and (b) that the sale was not fairly advertised and conducted.

Upon receipt of the trustee's petition for confirmation of the sale, notice was given to all parties in interest including all bidders and hearing has been held on the petition. A large number of witnesses were heard in support of both petitions.

It appears from the testimony of the witnesses and various documents received as exhibits, that the Wilton Woolen Company has, since the date of the sale, entered into a contract to purchase much of the machinery from the successful bidders and to purchase the mill property itself. Representation is made by the trustee and by the president of Wilton Woolen Company that should the sale in lots be confirmed as sought by the trustee, Wilton Woolen Company will, as soon as practicable, resume operation of these mill properties and will provide employment for several hundred people. On the other hand, petitioner Krintzman represents that if the so-called "bids in bulk" are confirmed by this Court, Deering, Milliken & Company, Inc., one of the largest textile manufacturers in this country, will undertake operation of the mill pursuant to an agreement reached subsequent to the date of sale. This proposed operation by Deering, Milliken & Company, Inc., will likewise furnish employment to

several hundred persons living in the Winthrop, Maine, area.

All witnesses who testified on the subject agreed that the sale was well attended, fairly conducted, and that there was spirited bidding by large numbers of persons. The testimony of the auctioneer and the trustee that the sale was well advertised appears to be unrebutted.

Prior to the sale, this Court ordered an appraisal made by two appraisers having wide experience in the industrial property and machinery appraisal field. The total appraisal was $514,146.

A sale of assets of a bankrupt's estate under an order of the Bankruptcy Court directing such sale, is a judicial sale as distinguished from an execution sale. In re Haywood Wagon Co., 2 Cir., 219 F. 655, certiorari denied 238 U.S. 625, 35 S.Ct. 663, 59 L.Ed. 1495. One of the parties thereto is the Bankruptcy Court itself. Although title to the property vests in the trustee under the provisions of Section 70 of the Act, 11 U.S.C.A. § 110, the true vendor in any bankruptcy sale is the Court itself. See, In re Haywood Wagon Co. supra. It necessarily follows, therefore, there is no sale of a bankrupt's assets until the offer of the bidder is accepted by the Court. An "order confirming the sale" is actually an order accepting an offer to purchase.

While it would seem clear that the low bidder of a bankruptcy auction sale would have no standing to ask that a sale be set aside in order that he might have another chance to bid, See: Jacobsohn v. Larkey, 3 Cir., 245 F. 538, L.R.A.1918C, 1176, it would seem Krintzman should have standing to come into Court and urge that his offer be accepted. As to the matter of procedure, it seems that the method Krintzman chose to bring his position before the Court, i. e., by petition for confirmation of his bid, is a proper one. Clearly Goldfine, as an alleged creditor, has standing to urge upon the Court that neither bid be accepted.

It would seem Goldfine's position is without merit. The evidence produced at the hearing on the petitions for confirmation clearly establishes that the sale was well advertised, was properly conducted and well attended. The amount bid was in the aggregate within a few thousand dollars of the amount of the appraisal and no sound reason appears for refusal to accept one or the other of the groups of bids.

In determining which bid should be accepted it seems clear that the Court would have a right to permit Krintzman to appear, offering an amount equal to or greater than the amount offered by the so-called bulk bid and accept his bid if it appeared, by this action the public interest would best be served and there would be employment provided for large numbers of persons in the area. In re Prairie Coal Co., D.C.E.D. Ill.1941, 40 F.Supp. 894. In the instant case, however, the evidence reveals that whichever of the groups of bids is accepted, the mill will be operated and large numbers of persons living in the area will be employed.

Judicial sales are an indispensable part of the machinery employed in the administering of bankrupt estates. Public policy requires stability in such sales. In re Burr Mfg. & Surety Co., 2 Cir., 217 F. 16. To induce bidding at such sales and reliance upon them "the purpose of the law is that the sale shall be final", Pewabic Mining Co. v. Mason, 145 U.S. 349, 12 S.Ct. 887, 888, 36 L.Ed. 732. Except in extraordinary circumstances the integrity of judicial sales can best be preserved by confirming the highest bids in any case where it appears the auction was fairly conducted, properly attended, and well advertised. There seems to be no cogent reason why these considerations of policy should not govern in the instant case and the petition for confirmation offered by the trustee approved.

Petitioner Krintzman urges the order directing that bids in bulk be obtained prior to receiving bids in lots was unfair to him. While the manner of offering property at public auction is not controlled by local rule in this jurisdiction, some Courts have adopted such local rules. In every case it appears the rule adopted contains provision that property may be sold first in bulk and then in lot, but not vice versa (See for example: Bankruptcy Rule 11, Northern District of New York; Collier on

Bankruptcy 14th Edition, Volume 4, Page 1565). These rules were promulgated after some years of experience. One of the aims of the bankruptcy administration is to obtain the highest price possible in the sale of bankrupt's assets. We must assume the experience of the Courts which have such a rule has been that the greatest price may be obtained when sales are conducted in this manner. The trustee offered the property in conformity with the order of sale and there is nothing here to show either in the order of sale or in the manner in which the trustee executed it that this particular petitioner was injuriously affected. See Jacobsohn v. Larkey, supra. Petitioner Krintzman's objection is without merit.

## Findings of Fact

I find as fact:

1. That notice of the proposed sale was given to all creditors and all alleged lienors at least ten days before the date of the entry of the order of sale.

2. The sale was properly conducted, well attended and properly advertised.

3. The amount bid by the persons who bid for the lots was not grossly inadequate.

4. The public interest will as well be served by the approval of one petition for confirmation as the other.

5. The interest of creditors will best be served by acceptance of the bids described in the trustee's petition for confirmation.

## Conclusions of Law

The highest bids received at a bankruptcy sale which is well advertised, properly conducted and well attended should be accepted when not adverse to the best interests of the public.

The petition for confirmation filed by Samuel Krintzman is denied. The petition for confirmation filed by the trustee is approved. An order is being entered in conformity with this opinion.

CLIFFORD, District Judge.

This matter comes before this Court on the petition of Allen L. Goldfine, a stockholder and creditor of the above-named bankrupt, for review of an Order of the Referee in Bankruptcy, dated October 10, 1952, approving and confirming sale of the bankrupt's estate, in parcels in accordance with the petition of the Trustee requesting approval and confirmation of said sale.

The petitioner alleges that the order of the Referee, filed October 10, 1952, approving and confirming the sale of the bankrupt estate in parcels is erroneous for the following reasons:

(1) That the Trustee in offering the aforesaid bankrupt's estate for sale exercised his discretion, improvidently, thereby militating against the interest of the bankrupt and its creditors;

(2) That the inadequacy of the purchase price coupled with all the circumstances attending the sale is so gross as to fairly shock one's conscience;

(3) That the rights of all interested persons were not protected by reason of the manner and method employed in the acceptance of the various bids;

(4) That the said sale was not fairly conducted by reason of the fact that it was not sufficiently and extensively advertised in a manner and through such medium generally recognized by the "trade", so that the results of the sale as consummated are detrimental to the interest of the bankrupt and its creditors;

(5) That the conduct of the Trustee and of the appraisers was prejudicial to the right of the Bankrupt and all of its creditors;

(6) That the property as appraised does not reflect a true and proper appraisal;

(7) That the purchase price offered on the present appraisal would be less than 75% of a true and proper appraisal.

Wherefore the Petitioner prays for a review of said Order by the Judge, and that the said Order be vacated and set aside and that an Order be made vacating the sale.

It appears from the transcript of the testimony presented at the hearing on October 10, 1952, that the auction was well attended, conducted, and that the bidding was spirited. It further appears that an appraisal was made in accordance with a Court Order and that the total of the bids

accepted was within a few thousand dollars of the amount of the appraisal.

From said transcript it is the opinion of this Court that the Referee had sound reason to find as fact;

(1) That notice of the proposed sale was given to all creditors and all alleged lienors, at least ten days before the date of the entry of the Order of Sale;

(2) The sale was properly conducted, well attended, and properly advertised;

(3) The amount bid by the persons who bid for the lots was not grossly inadequate;

(4) The public interest will as well be served by the approval of one petition for confirmation as the other;

(5) The interest of creditors will best be served by acceptance of the bids described in the Trustee's petition for confirmation.

In the opinion of this Court, it is unnecessary to repeat what has already been well stated in the opinion of the Referee in Bankruptcy, dated October 10, 1952, and this Court is thoroughly in accord with the reasoning, findings of fact, and conclusions of law stated therein, and hereby adopts the same for the reasons stated.

Hearing on the petition for review was had on December 1, 1952, at which time petitioner, Allen L. Goldfine, appeared pro se and presented oral argument to the Court. This Court has taken into consideration the fact that the Petitioner, lacking legal training, went far afield in his argument without restriction being placed upon him by the Court. This Court finds, however, that none of said argument was pertinent or material to the petition for review, nor did it present any facts or law not previously presented to the Referee as appears from the transcript referred to above.

Therefore, it is the opinion of this Court that the Referee in Bankruptcy used sound reason and good judgment in approving and confirming the sale of the assets of the above-named bankrupt as determined by him.

It is therefore ordered, adjudged and decreed that the petition of Allen L. Goldfine for review of the Referee's Order approving and confirming the sale of the bankrupt estate be and hereby is denied.