**LANE INDUSTRIES, Inc.**

v.

**UNITED STATES.**

No. 48843.

United States Court of Claims

June 4, 1958.

Whitaker, J., dissented.

Michael Berman, New York City, for plaintiff. William I. Musso, Richmond Hill, N. Y., was on the brief.

Edward L. Metzler, Washington, D. C., with whom was Acting Asst. Atty. Gen. George S. Leonard, for defendant.

JONES, Chief Judge.

This is an action under the War Contract Hardship Claims Act, known as the Lucas Act, 60 Stat. 902, as amended, 62 Stat. 869, 992, 41 U.S.C.A. § 106 note, to recover from the United States the sum of an alleged net loss which plaintiff claims was sustained by its assignor in the performance of various Government contracts between September 16, 1940, and August 14, 1945.

Pursuant to Rule 38(b) of the rules of this court, 28 U.S.C.A., we entered an order on October 20, 1954, directing that a separate trial be held on the following issues:

1. Whether under the law plaintiff is entitled to recover in view of the fact that plaintiff was not the original contractor but is the successor in interest to the original contractor through reorganization proceedings.

2. Whether the written request for relief contained in the letter of March 12, 1944, set out in paragraph 4 of the answer, satisfies the requirements of the Lucas Act.

A hearing was held and we now have the report of the trial commissioner before us, together with the brief of plaintiff and the exceptions and brief of the defendant.

With regard to the first issue above, plaintiff recognizes that, as a general rule, assignments of claims against the United States are rendered void by the provisions of Rev.Stat. § 3477, as amended, 35 Stat. 411 (1908), 54 Stat. 1029 (1940), 31 U.S.C.A. § 203 which, in pertinent part, provides that

> "All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, * * * shall be absolutely null and void, * * *"

Nevertheless, plaintiff maintains that the assignment to it of the present claim was not affected by this section since such assignment was by operation of law, i. e., pursuant to an order of sale by a bankruptcy court and, therefore, excepted from the operation of the statute. In support of its position, plaintiff cites Davis Sewing Machine Co. of Delaware v. United States, 1925, 60 Ct.Cl. 201, affirmed 1927, 273 U.S. 324, 47 S.Ct. 352, 71 L.Ed. 662; In re Gerstenzang, D.C. S.D.N.Y.1933, 5 F.Supp. 904; and In re Pottasch Bros. Co., D.C.S.D.N.Y.1935, 11 F.Supp. 275.

We agree with plaintiff that these cases represent a rule, long and firmly established in the law, to the effect that 31 U.S.C.A. § 203 does not prohibit assignments by operation of law, of which assignments pursuant to a bankruptcy court's order of sale represent one example. See Erwin v. United States, 1878, 97 U.S. 392, 24 L.Ed. 1065.

However, we are unable to agree with plaintiff that the instant claim was assigned to it by operation of law. Rather, we think that a realistic analysis of the facts and circumstances surrounding the assignment in the present case shows that the assignment was accomplished by the voluntary act of an individual and is therefore not excepted from the prohibitions of 31 U.S.C.A. § 203.

There are involved in this case three somewhat related corporations all of which have the word "Lane" in their titles which, for convenience, will be referred to herein as Lane I, II, and III.

Lane I (known as Lane Lifeboat & Davit Corporation) was the original contractor with the Government which allegedly sustained losses from its contract work for which recovery is now sought. It filed formal claims under the Lucas Act with the United States Maritime Commission in 1947. Thereafter, it was completely dissolved as the result of certain bankruptcy proceedings (as will appear more specifically hereinafter) and is no longer in existence.

Toward the end of the war, Lane I was having difficulty in meeting its financial obligations. One of its creditors was an Anthony Staudt who for more than 20 years had been a supplier for Lane I and, in addition, was a subcontractor on some of Lane I's war contracts. Staudt conducted his business through two corporations that were wholly owned by him.

Another creditor was Edwin V. Krolman who was also vice president of Lane I.

At about this time, apparently at the request of Lane I's president, Staudt began to take an active part in attempting to straighten out the financial affairs of Lane I and, late in 1945 or early in 1946, he became a member of its board of directors.

The efforts to pay creditors and rehabilitate Lane I continued until June 1947. Staudt did not receive any pay for the

work he did during this period and, furthermore, he disposed of his wholly owned corporations and used the proceeds for the benefit of Lane I. Edwin V. Krolman also furnished money to Lane I during this period.

These efforts to rehabilitate Lane I, however, were not meeting with much success. On June 9, 1947, Lane I filed a petition for reorganization under chapter X of the Bankruptcy Act (11 U.S. C.A. § 501 et seq.) in the District Court for the Eastern District of New York. The petition was approved and two trustees were appointed and duly qualified. These were Staudt and a Hunter L. Delatour. The latter apparently had had no previous association with Lane I.

Lane I was continued in business by the trustees. Staudt's primary responsibility as trustee was actually to manage and run the business, whereas Delatour was primarily concerned with handling other matters that arose during the trusteeship.

On March 12, 1948, the United States Maritime Commission rejected Lane I's claim under the Lucas Act.

Shortly thereafter, the attempted reorganization of Lane I was apparently abandoned for on May 24, 1948, the bankruptcy court confirmed a judicial sale of Lane I's real property. Thereafter, the assets that remained in Lane I consisted of its machinery, equipment, inventory, etc., plus its rejected claim under the Lucas Act.

On June 15, 1948, the trustees received an offer to purchase all the remaining assets of Lane I for $31,000. The offer was made by "Edwin V. Krolman, doing business under the trade-name and style of Lane Industries." Accompanying this offer was a letter from Staudt to his co-trustee, Delatour, which referred to Krolman's offer as being made by "a group" which, until the formation of a corporation, was using the trade name of Lane Industries. Staudt's letter then informed Delatour that he (Staudt) was "associated" with this group and "interested" in its offer, and that he would,

therefore, take no action as trustee with regard to the offer and would resign as trustee if either the court or Delatour deemed it advisable.

This original offer was rejected by the trustee apparently because the price was not considered fair. On June 21, 1948, the offer was amended to increase the price to $37,500.

On June 23, 1948, Delatour, as trustee, petitioned the bankruptcy court to issue an order to show cause why Krolman's amended offer should not be approved. One of the assets specifically referred to in the petition was the claim of Lane I under the Lucas Act.

In his petition, Delatour informed the court that Krolman's offer was being made by him "for and on behalf of a group of employees and officers of the debtor corporation, including Mr. Staudt."

An order to show cause why the offer of Krolman should not be approved was issued by the court and notice of the proposed sale given. On July 7, 1948, a hearing on the show cause order was held before the court and Krolman's offer was again increased, this time to $41,-400.

On July 19, 1948, the bankruptcy court entered an order whereby it "accepted" Krolman's offer and "approved and confirmed" the sale of all the remaining assets to him, or his assigns, which assets included the claim of Lane I under the Lucas Act.

Thereafter, on July 29, 1948, Krolman assigned his interest in the assets acquired by him under the July 19 order to Lane Industries, Inc., hereinafter referred to as Lane II. This assignment specifically included the rejected Lucas Act claim.

Lane II is the plaintiff in this case. It is a New York corporation which filed a certificate of incorporation with the appropriate State agency on August 5, 1948. Lane II is authorized to issue 500 shares of common stock having a par value of $100 each. Only ten shares of

its capital stock have been issued. Originally, these were issued to Staudt (acting in his wife's name—6½ shares) and Krolman (3½ shares). On December 6, 1948, Krolman assigned his 3½ shares to a Margery Nyman. Staudt assumed ownership of his 6½ shares in his own name on December 16, 1948. At the time of the trial herein, Staudt and Margery Nyman continued to own all of Lane II's outstanding stock. As will appear hereinafter, Lane II has no business nor has it any assets except for the Lucas Act claim upon which this suit is predicated.

On August 23, 1948, the trustees and Lane I executed instruments conveying to Lane II the claim of Lane I under the Lucas Act. The authority for this conveyance was stated to be the July 19 order of the bankruptcy court and the subsequent assignment by Krolman of all his interest thereunder to Lane II. The conveyance stated that Lane II had paid a consideration of $34,998.23 [1] to the trustees pursuant to the court order. The evidence does not show where Lane II, which had only a $1,000 capital contribution, acquired money sufficient to pay this sum to the trustees.

It is upon the above conveyance that plaintiff relies to show that the assignment of the present claim to it was by operation of law. Plaintiff instituted suit in this court on the assigned claim on September 10, 1948.

No formal conveyance was ever made to Lane II of any of the other assets of Lane I, sale of which had also been confirmed by the court order of July 19, and the rights to which Krolman had assigned on July 29. However, on October 28, 1948, Lane II executed an instrument which purported to convey all of the assets of Lane I (except its Lucas Act claim) acquired by the bankruptcy sale to Staudt, Krolman, James B. Sulli-

van, Peter J. Lahny, and William I. Musso.

On November 1, 1948, the five individuals referred to above assigned all the assets which they had purportedly acquired from Lane II to Lane Lifeboat & Davit Corporation,[2] hereinafter referred to as Lane III.

Lane III took over the business that had been carried on by Lane I for many years and, at the time of the trial herein, was still engaged in that business. Staudt is president, general manager, and a member of the board of directors of Lane III.

As previously indicated, Lane II, the plaintiff, is not engaged in any business activity and does not have any assets with the exception of the claim involved in this suit: its sole purpose is to hold title to this claim.

It will be noted that there were three steps which accomplished the assignment of the Lucas Act claim to plaintiff: (1) the court order of July 19 approving and confirming its sale to Edwin V. Krolman, or his assigns; (2) the conveyance by Krolman on July 29 of all his right, title and interest in the claim to plaintiff; and, (3) the conveyance by the trustees on August 23 of all their right, title and interest in the claim to plaintiff, as Krolman's assignee.

It is the plaintiff's position that the claim was assigned to it by operation of law since its title thereto is derived from a conveyance by trustees in bankruptcy pursuant to a court's order of sale. It is by observing only plaintiff's chain of legal title to the claim that this conclusion finds support. By observing the substance of the transaction, however, in the light of established law, a different conclusion must be reached.

■ It is clear that in a judicial sale such as is involved in this case, it is the court that is the real vendor, Pewa-

---

1. This figure represents the entire amount due the trustees under Krolman's offer of $41,400 after an adjustment for an account receivable which had been elim-

inated from the assets by payment made directly to the trustees.

2. A New York corporation having the same name as Lane I.

bic Mining Co. v. Mason, 1892, 145 U.S. 349, 12 S.Ct. 887, 36 L.Ed. 732; In re United Toledo Co., 6 Cir., 1945, 152 F.2d 210, and the trustee is merely its agent to obtain the highest bid. Coulter v. Blieden, 8 Cir., 1939, 104 F.2d 29, certiorari denied, 308 U.S. 583, 60 S.Ct. 106, 84 L.Ed. 488. When, therefore, the sale of the claim was approved and confirmed by the court to Edwin V. Krolman, or his assigns, Krolman acquired vested rights in the claim and *full equitable title passed to him at that moment.* In re Burr Mfg. and Supply Co., 2 Cir., 1914, 217 F. 16; Morrison v. Burnette, 8 Cir., 1907, 154 F. 617; In re Marathon Foundry & Machine Co., 7 Cir., 1956, 239 F.2d 122, certiorari denied sub nom. Dyner v. Schwartz, 1957, 353 U.S. 912, 77 S.Ct. 669, 1 L.Ed.2d 665; In re Crosby Stores, Inc., 2 Cir., 1933, 65 F.2d 360; Moccasin State Bank v. Waldron, 1928, 81 Mont. 579, 264 P. 940. "[A] confirmation has the effect of completing the sale, and while it does not pass the legal title it vests the full equitable title to the property in the purchaser, even though the deed executed in pursuance thereof is irregular, and even if no deed whatever is made." In re Burr Mfg. and Supply Co., supra, 217 F. at page 19. So final is a sale after confirmation by a court of competent jurisdiction that it cannot be set aside except for reasons for which equity would set aside an executed sale between private parties, Morrison v. Burnette, supra; In re Burr Mfg. and Supply Co., supra; that is fraud, Webster v. Barnes Banking Co., 10 Cir., 1940, 113 F.2d 1003, or mistake, In re Jewett & Sowers Oil Co., 7 Cir., 1936, 86 F.2d 497; Slocum v. Edwards, 2 Cir., 1948, 168 F.2d 627.

■ It follows, therefore, that the assignment of the instant claim by operation of law was accomplished, in every substantial sense, when the court entered its order on July 19 confirming sale of the claim to Edwin V. Krolman, or his assigns. Thereafter, the claim was vested in Krolman to do with as he pleased: he could compel conveyance of the legal title to himself or to anyone to whom he might assign his rights, and the court, by the very terms of its order, recognized his complete dominion over the claim by spelling out his unlimited power to direct and enforce any assignment he might wish.

Krolman assigned his interest in the claim to the plaintiff ten days after the bankruptcy court had confirmed its sale to him. Thereafter, the trustees conveyed the legal title to plaintiff. *But it was Krolman's assignment* and not any assignment by operation of law which transferred the claim to the plaintiff. This assignment by Krolman was an indispensable prerequisite in order for plaintiff to have any interest in the claim and was entirely voluntary on Krolman's part, being neither required nor accomplished by any operation of the law. As such, it was rendered "absolutely null and void" by 31 U.S.C.A. § 203 and, therefore, plaintiff's action must fail.

Of course, we realize that had Krolman been acting in this matter as an agent of the plaintiff, the July 19 order confirming the sale of the claim to him would have been, in reality, a sale to the plaintiff and Krolman's subsequent assignment would not have been within the prohibitions of the Anti-Assignment statute. Pantex Pressing Machine Co. v. United States, 1947, 71 F.Supp. 859, 108 Ct.Cl. 735; Seaboard Air Line Ry. v. United States, 1921, 256 U.S. 655, 41 S. Ct. 611, 65 L.Ed. 1149.

As we have noted above, Krolman, in making his offer to purchase Lane I's assets, purported to act "for and on behalf of a group of employees and officers of the debtor corporation, including Mr. Staudt." This "group" could not have been the plaintiff which was a corporation consisting solely of Staudt and Krolman (at this time). In short, though the evidence is confused and unsatisfactory as to what Krolman's status was in making his offer, there is nothing in the record from which we could find that Krolman, in purchasing the property and

having the sale "approved and confirmed" to him was acting as agent of the plaintiff. Accordingly, there is no alternative but to conclude that Krolman's assignment of the claim to the plaintiff was within the prohibitions of 31 U.S.C.A. § 203.

In the view we take it is unnecessary to consider whether plaintiff's assignor filed an adequate written request for relief within the meaning of section 3 of the Lucas Act.

Plaintiff's petition will be dismissed.

It is so ordered.

LARAMORE, MADDEN and LITTLETON, Judges, concur.

WHITAKER, Judge (dissenting).

The majority opinion shows that Krolman offered to purchase the remaining assets of Lane I on behalf of a group which was using the trade name of Lane Industries. This group turned out to be Krolman and Staudt. Krolman and Staudt then formed a corporation, designated in the majority opinion as Lane II, and Krolman transferred to it the claim of Lane I under the Lucas Act. Under these circumstances I think Krolman was acting as the agent of Lane II when he purchased these assets and, therefore, that the sale by the Bankruptcy Court should be considered as a sale to Lane II and, hence, not within the Anti-Assignment statute as that statute has been construed.